(CLARK, J., dissents, arguendo, in which AVERY, J., concurs.)
"1. That at and prior to 1 January, 1891, C. W. Jeffreys, W. A. Hart and Eli Howell were doing a mercantile business in the town of Tarboro, N.C. under the style of Howell, Hart Jeffreys, and on said day, or thereabout, C. W. Jeffreys, acting for said firm, borrowed of J. T. Howard $1,770.04, payable on 1 January, 1892, and to better secure the same endorsed to said Howard a certain sealed note or bond of J. C. Powell, made payable to Howell, Hart Jeffreys, for the sum of $983.72, due and payable 1 January, 1891, and by said endorsement said firm became responsible for the payment of said note or bond then due, as well as each member thereof.
"2. That thereafter, to wit, on or about 1 January, 1892, said firm dissolved partnership and C. W. Jeffreys continued business, assuming the liabilities of said firm and receiving all accounts, etc., belonging to or due said firm, and continued business under the firm name of C. W. Jeffreys Co. until 2 December, 1892, when he made an assignment for the benefit of his creditors, appointing H.L. Staton his assignee. Said assignment provided, among other things, as follows: `Second, he (meaning the trustee) shall pay Vaughan Barnes, Norfolk, Va., the sum of $3,000, due by note maturing 1 December, 1892, and for the further sum of $1,954.70, due on open account, all collaterals held by said parties to be surrendered at once to said party of the second part' (meaning the trustee).
"3. That the said sealed note or bond due said Howard is still unpaid, and amounts to $1,770.04, and interest at eight per cent from 3 (137) January, 1891, and said Howard still holds said note or bond endorsed to him by said firm of Howell, Hart Jeffreys.
"4. That at the time, or soon thereafter, the said firm of Howell, Hart Jeffreys dissolved partnership, the said Howard holding said note and the note of said Powell as additional security, both of which were due; saw the said Jeffreys, who had assumed to pay the same, and told him that the said note due the said Howell must be paid or better secured. Thereupon said Jeffreys agreed to better secure said note. That in a few days after the said Jeffreys, as this affiant is informed and believes, had the said J. C. Powell to secure by mortgage or trust deed the note which had been assigned to said Howard, together with other claims due the said Jeffreys, and perhaps others. Said mortgage or trust deed was executed by said J. C. Powell and his mother, M. B. Powell, and conveyed therein certain lands fully described, amply sufficient to pay all the claims therein secured. That at the time of taking the security said Jeffreys took from said Powell a new note for $1,618.47, carrying interest at eight per cent from date and payable 1 November, 1892, being dated 4 January, 1892. Of this amount $1,141.61 was for the note held by the said Howard (being the $983.72 note and interest to 4 January, *Page 83 
1892), the remainder being the account then due by said Powell to said Jeffreys. Soon after taking this note and security, said Jeffreys informed this plaintiff (Howard) that he had secured the amount due by Powell to said firm, and by them assigned to him by mortgage or trust deed, together with certain funds due him. Thereupon the said Howard did not enforce the payment of said note.
"5. That at the time the said Jeffreys made his assignment as hereinbefore stated, said note of $1,618.47, secured by said mortgage, was held by the firm of Vaughan Barnes, commission merchants of Norfolk, Va., without the knowledge or consent of the said (138) Howard.
"6. On 4 April, 1893, said Vaughan Barnes brought this action in the Superior Court of Edgecombe County to foreclose said trust deed or mortgage for the payment of said debts as aforesaid. At the Spring Term, 1893, a judgment of foreclosure was entered, as fully appears from said judgment as filed among the papers in this action, authorizing the sale of the property therein conveyed. And said sale was made by virtue of said judgment, and the purchase-price of said property was ample to pay all claims therein, and interest and costs.
"7. That at June Term, 1895, of said court, the following order was entered, to wit:
"`This cause coming to be heard, and it appearing to the Court that Vaughan Barnes only held the claims sued upon in this action as collateral security for a claim against C. W. Jeffreys, who executed a trust deed to H.L. Staton, trustee, and that since this suit was brought H.L. Staton, trustee, has paid the plaintiff (meaning Vaughan Barnes) their debt against C. W. Jeffreys in full, it is therefore ordered that H.L. Staton, trustee, be made a party to this action, and that said trustee shall in all respects take the place of the plaintiffs as to the liability for costs, if any, and also to recover, as trustee, all such sum or sums as the plaintiff shall recover of the defendants in this action, and that Vaughan Barnes be in all respects discharged from liability by reason of this suit from all costs heretofore or hereafter to accrue.
 `JAS. D. McIVER, `Judge Presiding.'
"8. That by the assignment of C. W. Jeffreys to H.L. Staton (139) much property and valuable choses in action passed to said Staton, such assignee, from which he has realized a large sum, to be expended under said assignment, to wit: $15,000, which sum is amply sufficient to pay all claims in said assignment preferred to that of the said Vaughan Barnes, and still leave a sufficiency to pay all costs and *Page 84 
expenses of executing said trust, and the said debt due said Vaughan 
Barnes, and take up said collaterals held by them as provided in said assignment.
"9. That said Staton, trustee as aforesaid, now has in his hands of said funds received under said assignment from C. W. Jeffreys, funds more than sufficient to pay the claim of this plaintiff, and all costs and expenses of said assignment, and the executing the same, and after paying all claims preferred in said assignment to that of the said Vaughan Barnes.
"10. That said Staton received from the property assigned to him by C. W. Jeffreys about $15,000; that a short time after the execution of said assignment an action was instituted against Staton by several of the creditors of the said C. W. Jeffreys, the purpose of which was to avoid said deed, and in said action an injunction was issued enjoining and restraining the said assignee from paying the debts secured or otherwise disposing of the said assets. That said action was pending in this court until Spring Term, 1895, when the said action was determined favorably to the validity of said assignment. That the plaintiffs, Vaughan Barnes, desiring to realize on the collaterals deposited with them, at the Spring Term, 1893, instituted this action for the purpose of collecting the said note of $1,683, and at _______ Term, 1893, a judgment was rendered in this action by which, as will appear by reference to said judgment, providing for the payment of said (140) note from the proceeds of the sale of the property of said J. C. Powell. That said note was paid to the plaintiffs Vaughan 
Barnes in the manner provided by said judgment. No part of the said note of $1,683 ever came into his hands as assignee, or otherwise, nor did he at any time have any control over the said note, or the proceeds thereof, or the application of the same. That on or about 1 January, 1893, J. T. Howard gave him notice of the facts as set out in section 4, and that said Staton has notice of said claim of the said Howard. That he had in his hands an amount more than sufficient to pay debts preferred in said assignment prior in order of preference to debt of Vaughan Barnes, but he never at any time had in his possession any portion of the proceeds of the note of $1,683 in controversy. He has in his hands from the proceeds of the assets of the said C. W. Jeffreys by virtue of said assignment an amount sufficient to pay the cost and expenses of executing the said assignment, but has not an amount sufficient to pay the debts secured and directed by said assignment to be paid from the said assets."
(The facts in the foregoing paragraph, No. 10, are admitted to be true, subject to the contention of the said J. T. Howard that said Staton *Page 85 
is conclusively bound by the judgment set out in paragraph 7 thereof, and if this Court shall so hold, then this admission is to be stricken out).
"His Honor rendered judgment as follows: It is adjudged that the plaintiff, J. T. Howard, is entitled to be, and is, subrogated to the right of Vaughan Barnes under the assignment of C. W. Jeffreys to H.L. Staton, trustee, for the purpose of having his debt paid, viz: One thousand, one hundred and forty-one dollars and sixty-one cents, with interest on same at eight per centum per annum from 4 January, 1892, to 17 May, 1893, until paid. And it appearing that H.L. Staton, trustee as aforesaid, now has in his hands funds belonging to said (141) trustee that is available under said assignment for the payment of Vaughan Barnes' debt, and sufficient to pay all claims in said assignment preferred to said debt of Vaughan Barnes, and all cost of administering and settling said trust, and more than sufficient to pay said sum of $1,141.61, with interest on same as aforesaid.
"It is therefore ordered and adjudged that said H.L. Staton, trustee, pay out of said trust funds now in his hands as aforesaid, to the said J. T. Howard, the sum of $1,141.61, with eight per cent interest from 4 January, 1892, until 17 May, 1893, and six per cent from 17 May, 1893, until paid, and the cost of J. T. Howard in this action, to be taxed by the Clerk."
From this judgment H.L. Staton, trustee, appealed.
This case comes before us by appeal from a judgment of the Court below upon a case agreed. And the interpleading plaintiff, Howard, insists that the judgment appealed from is correct and should be sustained on two grounds: First, under the doctrine of subrogation; and, secondly, under the doctrine of trusts and the right to follow the fund.
The doctrine of subrogation is entirely one of equitable origin, and means to substitute, to put one person in the place of another, and is usually exercised where one person has become liable for or has been compelled to pay money for another. In such cases equity will put such party so paying or so liable in the place of the other party for whom he has become so liable, or for whom he has so paid his money, and will give him all the benefits of secureties [securities] that the (142) other party had. Sheldon on Subrogation, 1, 2, 3. Thus understanding the doctrine of subrogation, we see no grounds for its application in this case. The plaintiff, Howard, has paid the debt of nobody, nor has he obligated himself to pay the debt of anybody. To whose place or to whose rights will he be subrogated? Not to Vaughan Barnes; he has *Page 86 
paid no debt for them. They only collected a debt out of the defendant Jeffreys that he justly owed them, by enforcing a security placed in their hands. And the doctrine of subrogation never interferes with equal or superior rights of others. 3 Pomeroy Eq. Jur., sec. 1419, note 1. He can not be subrogated to the rights of Jeffreys. He has paid no debt for him. But he needs no subrogation to Jeffreys' rights, as Jeffreys is his debtor, and he is entitled to such securities as he has for his debt on other principles. But the security which he alleges that Jeffreys held for his benefit has been legally paid and discharged. He can not be subrogated to the rights of Staton, the trustee, who is but the hand of Jeffreys for the collection and administration of the assets of Jeffreys under the deed of assignment. And besides, he has paid no debt, nor has he obligated himself to pay any debt for Staton as trustee, nor for the trust estate.
But it is contended that Vaughan Barnes had two securities for their debt, the note and mortgage of Powell, assigned to them as collateral security by Jeffreys, and the trust deed of Jeffreys to the defendant Staton. And the plaintiff Howard had but one, to wit, the note of Powell, assigned to him by Jeffreys as collateral security, and the mortgage of Powell to Jeffreys.
As it finally turned out, after a long litigation and after the Powell mortgage had been foreclosed, the debt of Vaughan Barnes was (143) secured by the deed of trust of Jeffreys to Staton. And it is true that Vaughan Barnes collected the Powell debt and applied it in satisfaction of their debt due from Jeffreys. And it is further contended by Howard that Vaughan Barnes should have collected all their debt out of the trust funds in the hands of Staton; and as they did not, but collected it out of the Powell debt and mortgage, that Howard should be subrogated to the rights of Vaughan Barnes, and allowed to collect his note on Powell out of Staton.
But the fact that Vaughan Barnes had two securities for their debt does not entitle Howard to the right of subrogation, unless he had a lien on the property of Powell conveyed in said mortgage, as he does not claim to have any lien on the funds in Staton's hands, unless it be by subrogation.
This brings us to a consideration of the facts under which Howard claims. Jeffreys owed Howard, and Powell owed Jeffreys a note of $983.72, and Jeffreys assigned this note to Howard as collateral security. Some time after this Howard applied to Jeffreys for additional security, and Jeffreys promised to have Powell to secure the note, so assigned, by mortgage, which he afterwards told Howard had been done.
But it seems that Powell was owing Jeffreys other sums besides the note which Jeffreys had assigned to Howard, amounting to $1,618.47, *Page 87 
including the Howard note, for which aggregated sum of $1,618.47, Powell executed a new note to Jeffreys, and secured this new note by mortgage.
This new note and mortgage Jeffreys assigned to Vaughan Barnes to secure a debt he owed them.
It is admitted that Vaughan Barnes had no notice of the existence of the Howard note until after the failure and assignment of Jeffreys. There was no mention of the Howard note in the mortgage (144) that could constitute constructive notice, nor was the registration of the mortgage any notice to them on the Howard debt, as it was not mentioned in the mortgage. The date of the assignment to Vaughan Barnes not being stated, it is presumed that it was before the note became due. And Vaughan Barnes, taking it without actual or constructive notice, took it discharged of all equities of either Powell or Howard. It therefore appears that Howard had no claim on Vaughan Barnes. Howard does not claim that he has, but claims that he has a right to be subrogated to their rights as against Staton. To entitle him to this equity, he must show that he had a lien on the property appropriated by Vaughan Barnes. 1 Pomeroy Eq. Jur., secs. 165, 166. This he attempts to show by the mortgage of Powell to Jeffreys. But this mortgage, in our opinion, fails to show this. It is to secure a note of even date with the mortgage for $1,618.47, payable to Jeffreys. Neither Howard nor the note he holds is mentioned in it. The mortgage does not, therefore, secure the Howard note by its terms and conditions, and can only be made to do so by extrinsic evidence, that would induce the Court, in the exercise of its equitable jurisdiction, to declare the lien. This the Court can not do, for the reason that Howard took this note long after it was due, and therefore subject "to any sets-off, or any other defense existing at the time of or before notice of the assignment." Code, sec. 177. There is nothing in the case to show that Powell had any notice of the assignment to Howard at the time he renewed the note and made the mortgage, or at the time the money was collected by Vaughan Barnes. And this being so, the mortgage and payment (145) of the new note was a satisfaction and discharge of the Howard note, so far as Powell is concerned. If Howard were to sue Powell on this note, the facts disclosed in this case make a good defense for Powell, and Howard would not be able to recover judgment against him. Code, sec. 177. If Howard is entitled to the right of subrogation he claims, it is upon the ground that property has been taken by Vaughan Barnes, upon which he had a lien and the right to have it applied to the payment of a debt due him from Powell. But, as we have seen, his right as against Powell is gone — that Powell, in legal contemplation, has paid off the debt and discharged himself from any *Page 88 
liability on account of this note. And it would be a legal solecism to say that a court of equity would enable a man to collect a debt that had been paid.
But if the note assigned to Howard had not been past due at the date of the assignment, so as not to affect him with the new note, mortgage and payment, there still appears to us to be another reason why he is not entitled to this right of subrogation. The mortgage, as we have stated, was not made to him, nor does it mention his debt or pretend in any way to secure the same. This being so, he had no estate in or lien on the property. At most, he only had a right — an equitable interest — which equity might declare and enforce. But until it is declared
there is no specific lien on the property. And after the property has been taken and appropriated to the payment of another debt, under a mortgage that was a specific lien, there is no property for the court to declare alien upon, and the plaintiff Howard's equitable relief against the property
must fail on that account; and if he had no lien on the property taken, he has no right to be subrogated to.
There is no doubt but he has a right of action against Jeffreys and the other obligors on their note, and also an action against (146) Jeffreys on his breach of trust; but he has no lien on their property. And the defendant Jeffreys having assigned his property to the defendant Staton, in trust for creditors, it is his duty to administer and pay it out as the trust deed directs.
So it seems clear to us that the judgment below can not be sustained under the doctrine of subrogation.
Neither can it be sustained under the doctrine of trusts and of following the fund. The mortgage from Powell to Jeffreys, at most, was only an equitable mortgage to the plaintiff Howard, as is stated above. It was not taken to him, nor was the debt assigned to him named in it, though it appears that this debt constituted a part of the consideration of the new note taken by Jeffreys and assigned to Vaughan Barnes. And it is expressly agreed that Vaughan Barnes had no notice of the note that Howard held. It may be that Howard might have enforced his equitable lien against Jeffreys and Powell before this mortgage was paid off and discharged by a sale of the property. But the foreclosure sale of the property and the payment thereby of the mortgage due from Powell, in which the note assigned to Howard was a part, discharged any equitable claim Howard may have had in it. And the only thing remaining to be considered is as to whether he can follow the fund arising from the sale under the mortgage. This, it seems to us, he can not do, as between him and Vaughan 
Barnes, as they took the note in the course of business for a valuable consideration and without notice of any equity the plaintiff Howard had upon it. Sheldon on Subrogation, *Page 89 
p. 239, sec. 155. Indeed, it was not contended on the argument that Howard had any claim on Vaughan Barnes. And it is stated in the record that they are discharged from any liability on (147) account of said transaction.
But plaintiff Howard contends that he may follow the fund in the hands of the trustee Staton. But he can not do this, as the proceeds of sale under the Powell mortgage (under which Howard claims he had an equitable interest) are not in the hands of Staton, and never have been. This is admitted. And it is impossible to follow a fund into the hands of a party, when it is not in his hands and never has been. There is error and the judgment below is
REVERSED.