VAUGHAN & BARNES v. C. W. JEFFREYS, et al.

*Subrogation—Following Trust Fund.*

J., being indebted to H., assigned to him an unsecured note of P.
for $983. H. insisting upon security, J. induced P. to exe-
cute a mortgage to secure a note for $1,618, covering the
aggregate of other indebtedness and the $983 note, which
latter, however, was in no wise mentioned in the new note
or mortgage. J. then assigned the $1,618 note before
maturity to V. & B. as collateral security for a debt due by
him to them, the latter having no notice of the fact that
the $1,618 note included the debt which had been assigned
to H. Subsequently, J. made a general assignment of all
his property to a Trustee, giving a preference to the debt
due to V. & B. By a foreclosure of the P. mortgage, the
debt of V. & B. was paid without entrenching upon the
funds in the hands of the Trustee, which were sufficient to
pay V. & B.'s debt and prior preferences; *Held,*

(1). That the fact that V. & B. had two securities for their debt
does not entitle H., who had no lien upon the property
appropriated to the payment of V. & B.'s debt, to be subro-
gated to the rights of the latter under the trust deed.

(2). That while H. may have enforced his equitable lien against
J. and P. before the mortgage was paid off by the fore-
closure sale, he cannot follow the fund arising from such
sale either into the hands of V. & B., since they took the P.
note and mortgage for value and without notice of H.'s
equity, or into the hands of the Trustee of J., since it is not,
and never has been, in his hands.

(CLARK, J., dissents, *arguendo*, in which AVERY, J. concurs.)

CIVIL ACTION, commenced in EDGECOMBE County Supe-
rior Court, against C. W. Jeffreys and J. C. Powell, April
4, 1893; and at April Term, 1893, of said court, H. L.
Staton, Assignee of C. W. Jeffreys, and in his own right,
and Geo. Howard and Donnell Gilliam came into court

and by consent were made parties defendants, At October Term, 1895, J. T. Howard was permitted to interplead. At June Term, 1896, said action was heard by *W. A. Hoke*, Judge Presiding at said Term, upon the following case agreed, to-wit:

"1. That at and prior to January 1, 1891, C. W. Jeffreys, W. A. Hart and Eli Howell were doing a mercantile business in the town of Tarboro, N. C., under the style of Howell, Hart & Jeffreys, and on said day, or thereabout, C. W. Jeffreys, acting for said firm, borrowed of J. T. Howard $1,770.04, payable on January 1, 1892, and to better secure the same endorsed to said Howard a certain sealed note or bond of J. C. Powell, made payable to Howell, Hart & Jeffreys, for the sum of $983.72 due and payable January 1, 1891, and by said endorsement said firm became responsible for the payment of said note or bond then due, as well as each member thereof.

"2. That thereafter, to-wit, on or about January 1, 1892, said firm dissolved partnership and C. W. Jeffreys continued business, assuming the liabilities of said firm and receiving all accounts, &c., belonging to or due said firm, and continued business under the firm name of C. W. Jeffreys & Co., until December 2, 1892, when he made an assignment for the benefit of his creditors, appointing H. L. Staton his assignee. Said assignment provided, among other things, as follows: ' Second, he (meaning the Trustee) shall pay Vaughan & Barnes, Norfolk, Va., the sum of $3,000, due by note maturing December 1, 1892, and for the further sum of $1,954.70, due on open account, all collaterals held by said parties to be surrendered at once to said party of the second part' (meaning the Trustee).

"3. That the said sealed note or bond due said Howard

is still unpaid, and amounts to $1,770.04, and interest at eight per cent. from January 3, 1891, and said Howard still holds said note or bond endorsed to him by said firm of Howell, Hart & Jeffreys.

" 4. That at the time, or soon thereafter, the said firm of Howell, Hart & Jeffreys dissolved partnership, the said Howard holding said note and the note of said Powell as additional security, both of which were due; saw the said Jeffreys, who had assumed to pay the same, and told him that the said note due the said Howard must be paid or better secured. Thereupon said Jeffreys agreed to better secure said note. That in a few days after the said Jeffreys, as this affiant is informed and believes, had the said J. C. Powell to secure by mortgage or trust deed the note which had been assigned to said Howard, together with other claims due the said Jeffreys, and perhaps others. Said mortgage or trust deed was executed by said J. C. Powell and his mother, M. B. Powell, and conveyed therein certain lands fully described, amply sufficient to pay all the claims therein secured. That at the time of taking the security said Jeffreys took from said Powell a new note for $1,618.47, carrying interest at eight per cent. from date and payable November 1, 1892, being dated January 4, 1892 Of this amount $1,141.61 was for the note held by the said Howard, (being the $983.72 note and interest to January 4, 1892,) the remainder being the account then due by said Powell to said Jeffreys. Soon after taking this note and security, said Jeffreys informed this plaintiff (Howard) that he had secured the amount due by Powell to said firm, and by them assigned to him by mortgage or trust deed, together with certain funds due him. Thereupon the said Howard did not enforce the payment of said note.

" 5. That at the time the said Jeffreys made his assignment as hereinbefore stated said note of $1,618.47, secured by said mortgage, was held by the firm of Vaughan & Barnes, commission merchants of Norfolk, Va., without the knowledge or consent of the said Howard.

" 6. On April 4, 1893, said Vaughan & Barnes brought this action in the superior court of Edgecombe county to foreclose said trust deed or mortgage for the payment of said debts as aforesaid. At the Spring Term, 1893, a judgment of foreclosure was entered, as fully appears from said judgment as filed among the papers in this action, authorizing the sale of the property therein conveyed. And said sale was made by virtue of said judgment, and the purchase price of said property was ample to pay all claims therein, and interest and costs.

" 7. That, at the June Term, 1895, of said court, the following order was entered, to-wit:

" This cause coming to be heard, and it appearing to the court that Vaughan & Barnes only held the claims sued upon in this action as collateral security for a claim against C. W. Jeffreys, who executed a trust deed to H. L. Staton, Trustee, and that since this suit was brought H. L. Staton, Trustee, has paid the plaintiff (meaning Vaughan & Barnes) their debt against C. W. Jeffreys in full, it is therefore ordered that H. L. Staton, Trustee, be made a party to this action, and that said Trustee shall in all respect take the place of the plaintiffs as to the liability for costs, if any, and also to recover, as Trustee, all such sum or sums as the plaintiff shall recover of the defendants in this action, and that Vaughan & Barnes be in all respects discharged from liability by reason of this suit from all costs heretofore or hereafter to accrue.

JAS. D. McIVER,
Judge Presiding."

" 8. That by the assignment of C. W. Jeffreys to H. L. Staton much property and valuable *choses in action* passed to said Staton, such assignee, from which he has realized a large sum, to be expended under said assignment, to-wit: $15,000, which sum is amply sufficient to pay all claims in said assignment preferred to that of the said Vaughan & Barnes, and still leave a sufficiency to pay all costs and expenses of executing said trust, and the said debt due said Vaughan & Barnes, and take up said collaterals held by them as provided in said assignment.

" 9. That said Staton, Trustee, as aforesaid, now has in his hands of said funds received under said assignment from C. W. Jeffreys funds more than sufficient to pay the claim of this plaintiff, and all costs and expenses of said assignment, and the executing the same, and after paying all claims preferred in said assignment to that of the said Vaughan & Barnes.

" 10. That said Staton received from the property assigned to him by C. W. Jeffreys about $15,000 ; that a short time after the execution of said assignment an action was instituted against Staton by several of the creditors of the said C. W. Jeffreys, the purpose of which was to avoid said deed, and in said action an injunction was issued enjoining and restraining the said assignee from paying the debts secured or otherwise disposing of the said assets. That said action was pending in this court until Spring Term, 1895, when the said action was determined favorably to the validity of said assignment. That the plaintiffs, Vaughan & Barnes, desiring to realize on the collaterals deposited w-th them, at the Spring Term, 1893, instituted this action for the purpose of collecting the said note of $1,683 and at........................ Term, 1893, a judgment was rendered in this action by

VAUGHAN v. JEFFREYS.

which, as will appear by reference to said judgment, providing for the payment of said note from the proceeds of the sale of the property of said J. C. Powell. That said note was paid to the plaintiffs Vaughan & Barnes in the manner provided by said judgment. No part of the said note of $1,683 ever came into his hands as assignee, or otherwise, nor did he at any time have any control over the said note, or the proceeds thereof, or the application of the same. That on or about January 1, 1893, J. T. Howard gave him notice of the facts as set out in Section 4, and that said Staton has notice of said claim of the said Howard. That he had in his hands an amount more than sufficient to pay debts preferred in said assignment prior in order of preference to debt of Vaughan & Barnes, but he never at any time had in his possession any portion of the proceeds of the note of $1,683 in controversy. He has in his hands from the proceeds of the assets of the said C.W. Jeffreys by virtue of said assignment an amount sufficient to pay the cost and expenses of executing the said assignment, but has not an amount sufficient to pay the debts secured and directed by said assignment to be paid from the said assets."

.(The facts in the foregoing paragraph, No. 10, are admitted to be true, subject to the contention of the said J. T. Howard that said Staton is conclusively bound by the judgment set out in paragraph 7 thereof, and if this Court shall so hold, then this admission is to be stricken out.)

His Honor rendered judgment as follows: It is adjudged that the plaintiff, J. T. Howard, is entitled to be, and is, subrogated to the right of Vaughan & Barnes under the assignment of C. W. Jeffreys to H. L. Staton, Trustee, for the purpose of having his debt paid, viz. : One Thousand One Hundred and Forty One Dollars and Sixty One Cents, with interest on same at eight per centum per annum

VAUGHAN *v.* JEFFREYS.

from January 4, 1892, to May 17, 1893, until paid. And it appearing that H. L. Staton, Trustee as aforesaid, now has in his hands funds belonging to said trust that is available under said assignment for the payment of Vaughan & Barnes's debt, and sufficient to pay all claims in said assignment preferred to said debt of Vaughan & Barnes, and all cost of administering and settling said trust, and more than sufficient to pay said sum of $1,141.61, with interest on same as aforesaid.

" It is therefore ordered and adjudged that said H. L. Staton, Trustee, pay out of said trust funds now in his hands as aforesaid, to the said J. T. Howard, the sum of $1,141.61, with eight per cent. interest from January 4, 1892, until May 17, 1893, and six per cent. from May 17, 1893, until paid, and the cost of J. T. Howard in this action to be taxed by the Clerk."

From this judgment H. L. Staton, Trustee, appealed.

*Mr. H. G. Connor*, for appellant.
*Messrs. G. M. T. Fountain* and *W. O. Howard*, for interpleader.

FURCHES, J.: This case comes before us by appeal from a judgment of the court below upon a case agreed. And the interpleading plaintiff, Howard, insists that the judgment appealed from is correct and should be sustained on two grounds: First, under the doctrine of subrogation; and, secondly, under the doctrine of trusts and the right to follow the fund.

The doctrine of subrogation is entirely one of equitable origin, and means to substitute, to put one person in the place of another, and is usually exercised where one person has become liable for or has been compelled to pay money for another. In such cases equity will put such

party so paying or so liable in the place of the other party for whom he has become so liable, or for whom he has so paid his money, and will give him all the benefits of securities that the other party had. Sheldon on Subrogation, 1, 2, 3. Thus understanding the doctrine of subrogation, we see no grounds for its application in this case. The plaintiff, Howard, has paid the debt of nobody, nor has he obligated himself to pay the debt of anybody. To whose place or to whose rights will he be subrogated? Not to Vaughan & Barnes; he has paid no debt for them. They only collected a debt out of the defendant Jeffreys that he justly owed them, by enforcing a security placed in their hands. And the doctrine of subrogation never interferes with equal or superior rights of others. 3 Pomeroy Eq. Jur., Sec. 1419, note 1. He cannot be subrogated to the rights of Jeffreys. He has paid no debt for him. But he needs no subrogation to Jeffreys' rights, as Jeffreys is his debtor, and he is entitled to such securities as he has for his debt on other principles. But the security which he alleges that Jeffreys held for his benefit has been legally paid and discharged. He cannot be subrogated to the rights of Staton, the Trustee, who is but the hand of Jeffreys for the collection and administration of the assets of Jeffreys under the deed of assignment. And besides, he has paid no debt, nor has he obligated himself to pay any debt for Staton as Trustee, nor for the trust estate.

But it is contended that Vaughan & Barnes had two securities for their debt, the note and mortgage of Powell, assigned to them as collateral security by Jeffreys, and the trust deed of Jeffreys to the defendant Staton. And the plaintiff Howard had but one, to-wit, the note of Powell, assigned to him by Jeffreys as collateral security, and the mortgage of Powell to Jeffreys.

VAUGHAN *v.* JEFFREYS.

As it finally turned out, after a long litigation and after the Powell mortgage had been foreclosed, the debt of Vaughan & Barnes was secured by the deed of trust of Jeffreys to Staton. And it is true that Vaughan & Barnes collected the Powell debt and applied it in satisfaction of their debt due from Jeffreys. And it is further contended by Howard that Vaughan and Barnes should have collected all their debt out of the trust funds in the hands of Staton; and as they did not, but collected it out of the Powell debt and mortgage, that Howard should be subrogated to the rights of Vaughan & Barnes, and allowed to collect his note on Powell out of Staton.

But the fact that Vaughan & Barnes had two securities for their debt does not entitle Howard to the right of subrogation, unless he had a lien on the property of Powell conveyed in said mortgage, as he does not claim to have any lien on the funds in Staton's hands, unless it be by subrogation.

This brings us to a consideration of the facts under which Howard claims. Jeffreys owed Howard, and Powell owed Jeffreys a note of $983.72, and Jeffreys assigned this note to Howard as collateral security. Some time after this Howard applied to Jeffreys for additional security, and Jeffreys promised to have Powell to secure the note, so assigned, by mortgage, which he afterwards told Howard had been done.

But it seems that Powell was owing Jeffreys other sums besides the note which Jeffreys had assigned to Howard, amounting to $1,618.47, including the Howard note, for which aggregated sum of $1,618.47, Powell executed a new note to Jeffreys, and secured this new note by mortgage.

This new note and mortgage Jeffreys assigned to Vaughan & Barnes to secure a debt he owed them.

It is admitted that Vaughan & Barnes had no notice of the existence of the Howard note until after the failure and assignment of Jeffreys. There was no mention of the Howard note in the mortgage that could constitute constructive notice, nor was the registration of the mortgage any notice to them on the Howard debt, as it was not mentioned in the mortgage. The date of the assignment to Vaughan & Barnes not being stated, it is presumed that it was before the note became due. And Vaughan & Barnes, taking it without actual or constructive notice, took it discharged of all equities of either Powell or Howard. It therefore appears that Howard had no claim on Vaughan & Barnes. Howard does not claim that he has, but claims that he has a right to be subrogated to their rights as against Staton. To entitle him to this equity, he must show that he had a lien on the property appropriated by Vaughan & Barnes. 1 Pomeroy Eq. Jur., Secs. 165, 166. This he attempts to show by the mortgage of Powell to Jeffreys. But this mortgage, in our opinion, fails to show this. It is to secure a note of even date with the mortgage for $1,618.47, payable to Jeffreys. Neither Howard nor the note he holds is mentioned in it. The mortgage does not therefore secure the Howard note by its terms and conditions, and can only be made to do so by extrinsic evidence, that would induce the Court, in the exercise of its equitable jurisdiction, *to declare* the lien. This the Court cannot do, for the reason that Howard took this note long after it was due, and therefore subject " to any sets-off, or any other defense existing at the time of or before *notice* of the assignment." *Code*, Sec. 177. There is nothing in the case to show that Powell had any notice of the assignment to Howard at the time he renewed the note and made the mortgage, or at the time the money was collected by Vaughan & Barnes.

And this being so, the mortgage and payment of the new note was a satisfaction and discharge of the Howard note, so far as Powell is concerned. If Howard were to sue Powell on this note, the facts disclosed in this case make a good defense for Powell, and Howard would not be able to recover judgment against him. *Code*, Sec. 177. If Howard is entitled to the right of subrogation he claims, it is upon the ground that property has been taken by Vaughan & Barnes, upon which he had a lien and the right to have it applied to the payment of a debt due him from Powell. But, as we have seen, his right as against Powell is gone—that Powell, in legal contemplation, has paid off the debt and discharged himself from any liability on account of this note. And it would be a legal solecism to say that a Court of Equity would enable a man to collect a debt that had been paid.

But if the note assigned to Howard had not been past due at the date of the assignment, so as not to affect him with the new note, mortgage and payment, there still appears to us to be another reason why he is not entitled to this right of subrogation. The mortgage, as we have stated, was not made to him, nor does it mention his debt or pretend in any way to secure the same. This being so, he had no estate in or lien on the property. At most, he only had a right—an equitable interest—which equity might declare and enforce. But until it is *declared* there is no specific lien on the property. And after the property has been taken and appropriated to the payment of another debt, under a mortgage that was a specific lien, there is no property for the court *to declare a lien upon*, and the plaintiff Howard's equitable relief against the *property* must fail on that account ; and if he had no lien on the property taken, he has no right to be subrogated to.

119—10

There is no doubt but he has a right of action against Jeffreys and the other obligors on their note, and also an action against Jeffreys on his breach of trust; but he has no lien on their property. And the defendant Jeffreys having assigned his property to the defendant Staton, in trust for creditors, it is his duty to administer and pay it out as the trust deed directs.

So it seems clear to us that the judgment below cannot be sustained under the doctrine of subrogation.

Neither can it be sustained under the doctrine of trusts and of following the fund. The mortgage from Powell to Jeffreys, at most, was only an equitable mortgage to the plaintiff Howard, as is stated above. It was not taken to him, nor was the debt assigned to him named in it, though it appears that this debt constituted a part of the consideration of the new note taken by Jeffreys and assigned to Vaughan & Barnes. And it is expressly agreed that Vaughan & Barnes had no notice of the note that Howard held. It may be that Howard might have enforced his equitable lien against Jeffreys and Powell before this mortgage was paid off and discharged by a sale of the property. But the foreclosure sale of the property and the payment thereby of the mortgage due from Powell, in which the note assigned to Howard was a part, discharged any equitable claim Howard may have had in it. And the only thing remaining to be considered is as to whether he can follow the fund arising from the sale under the mortgage. This, it seems to us, he cannot do, as between him and Vaughan & Barnes, as they took the note in the course of business for a valuable consideration and without notice of any equity the plaintiff Howard had upon it. Sheldon on Subrogation, p. 239, sec. 155. Indeed, it was not contended on the argument that Howard had any claim on

Vaughan & Barnes.    And it is stated in the record that they are discharged from any liability on account of said transaction.

But plaintiff Howard contends that he may follow the fund in the hands of the trustee Staton.    But he cannot do this, as the proceeds of sale under the Powell mortgage ( under which Howard claims he had an equitable interest) are not in the hands of Staton, and never have been.    This is admitted.    And it is impossible to follow a fund into the hands of a party, when it is not in his hands and never has been.    There is error and the judgment below is reversed.

Reversed.

CLARK, J. (dissenting):    The point presented, stripped of immaterial circumstances, is this :  Jeffreys endorsed for value to Howard a bond of Powell.    Howard pressing for further security of Powell or payment, Jeffreys procured Powell to execute a new bond secured by mortgage. Jeffreys notified Howard, who ceased thereupon to press for collection, but instead of turning the new bond with its security over to Howard, Jeffreys wrongfully assigned it, without knowledge of Howard, as collateral, to Vaughan & Barnes for a debt due them, without any knowledge on their part of Howard's claim to the bond.    Soon thereafter Jeffreys made an assignment to Staton, Trustee, for benefit of creditors,  Vaughan & Barnes being among the preferred creditors.    This action was begun by Vaughan & Barnes against Jeffreys & Powell to foreclose said mortgage.    Staton, Trustee, was subsequently substituted as party plaintiff, the court adjudging that he recover of Powell, as the order recited that Vaughan & Barnes had been paid in full, though it is agreed as a fact that in truth Vaughan & Barnes received the sum collected from

the Powell mortgage, but that after paying off all the indebtedness of Jeffreys to Vaughan & Barnes, and all other creditors holding preferences prior to theirs, there is still a balance in hands of Staton, Trustee.

On these facts Howard, who has interpleaded, claims,

1. That Staton, Trustee, is bound by the recitals in the judgment of foreclosure. 2. That if he is not, still the Powell mortgage was in equity held by Jeffreys as trustee for Howard, and by its tortious conversion to the payment of Vaughan & Barnes the fund now in the hands of Staton, Trustee, has been that much wrongfully swollen by use of the fund belonging to Howard, and that therefore Howard should now be subrogated (to the extent of the amount realized from the Powell mortgage) to the priority, or preference, which Vaughan & Barnes held under the deed of assignment, upon the general assets of Jeffreys in the hands of his assignee, H. L. Staton. The court below so held, and in this there was no error. It is true that if a trustee tortiously convert a trust fund to his own use, it becomes a debt having no priority or lien over other indebtedness, but if he pays off an incumbrance with the trust fund, in equity it is an investment for the *cestui que trust*, who is subrogated as owner of the incumbrance. So, on an assignment for creditors, a preferred debt is an incumbrance, so to speak, on the general assets in the hands of the assignee, and the use of the specific trust fund in favor of the preferred debt to Vaughan & Barnes subrogates Howard, the equitable owner of the trust fund, in their place as preferred creditor.

The principle applicable is the well-established one that a creditor whose fund has been taken to pay a prior debt is subrogated to the lien of that debt on other funds. Sheldon on Subrogation, Sects. 61 and 62, and cases there cited. As between Howard and Jeffreys, Howard had a

right to have Jeffreys decreed Trustee of the Powell mortgage for his benefit. By its tortious transfer to Vaughan & Barnes without notice, they were enabled to apply it on their claim, which, by the terms of Jeffreys' general assignment for benefit of creditors, became a preferred debt on all the assets of Jeffreys in the hands of Staton, his Trustee. But there being sufficient assets to pay off Vaughan & Barnes (and all liens prior to theirs) without touching this fund, which in equity belonged to Howard—as between Howard and Jeffreys—it should not have been applied to Vaughan & Barnes's debt, and having been so applied Howard is subrogated to the rank and priority of the debt which his fund paid. If Jeffreys had not passed the Powell mortgage to Vaughan & Barnes without notice, and it had gone with his other assets into the hands of his assignee, as against such trustee, since he stands in Jeffreys' shoes, Howard would be entitled to a decree that the mortgage be applied to the payment of the bond assigned to him by Jeffreys as a security to which bond the mortgage was executed, and which therefore inured to the benefit of Howard, the assignee and owner of the bond.

AVERY, J.: I concur in the dissenting opinion.