American Surety Company of New York, Appellant, v. State Trust & Savings Bank, of Mt. Pleasant, et al., Defendants; J. V. Gray, Administrator, Appellee.

No. 42243.

April 3, 1934.

Starr & Jordan, and Carr, Cox, Evans & Riley, for appellant.

J. V. Gray, Kenneth W. Nelson, and Galer & Galer, for appellee.

KINTZINGER, J.—█ Plaintiff was surety on the bond of E. E. Phelps, as administrator of the estate of Ralph V. Taft. While acting as administrator of that estate, he was also the acting and qualified administrator of the William Schliep estate. In January, 1931, Phelps, as administrator of the Taft estate, wrongfully withdrew $2,000 from the Taft estate, confiscated it to himself as administrator of the Schliep estate, and, as such, wrongfully used and applied the same to the benefit of the Schliep estate by paying it to Lombard College on a bequest made to that college under the will in the Schliep estate.

Phelps resigned as administrator in both estates in July, 1931. J. P. Budde was then appointed new administrator of the Taft estate, and J. V. Gray was appointed new administrator of the Schliep estate. Phelps's final report was disapproved, and the court adjudged him owing the Taft estate the $2,000 in question, and he was ordered to pay the same to the new administrator. On his failure to pay the amount so adjudged against him, the new administrator Budde, by order of court, brought suit against the surety company to recover the same. Judgment was then also obtained against the plaintiff herein as surety on Phelps's bond. This judgment was paid in full by the plaintiff surety, and in September, 1932, plaintiff filed its petition in this action asking to be subrogated to the rights of Phelps, the former administrator of the Taft estate, against the new administrator of the Schliep estate.

Originally other claims were made and other parties made defendants. All other parties and claims were otherwise disposed of, and the sole question now remaining relates to plaintiff's claim for subrogation to all rights of J. P. Budde, as administrator of the Taft estate against the William Schliep estate, and the present administrator thereof.

The foregoing facts are substantially those alleged in the petition.

The defendant Gray, administrator of the William Schliep estate, filed a motion to dismiss plaintiff's petition on several grounds, all of which may be reduced to the one general ground, that the allegations of the petition failed to establish the right of subrogation for and on behalf of plaintiff.

The lower court sustained the motion to dismiss, and the sole question for review is the ruling of the lower court in holding that the surety upon the Phelps bond is not entitled to subrogation of the rights of the Taft estate against the Schliep estate and the administrator thereof, for the funds wrongfully paid out to one of the legatees of the Schliep estate as alleged.

When Phelps was appointed administrator of the Taft estate, he qualified by giving a bond signed by himself as principal, and the American Surety Company as surety, obligating themselves to the Taft estate for any loss occasioned by the administrator's defaults.

It is conceded that, before the payment of this claim by plaintiff, the Taft estate had a right to sue either the Schliep estate for such moneys or the surety on Phelps's bond as administrator of the Taft estate.

The plaintiff contends that, having paid the judgment against it on the administrator's bond, it reimbursed the Taft estate with the funds wrongfully taken therefrom, and thereby became subrogated to all rights of the Taft estate against the Schliep estate.

This claim is made under the equitable doctrine of subrogation. It is appellee's claim, however, that the administrator of the Taft estate could have elected to pursue his remedy on the bond or his remedy against the Schliep estate. Having chosen the remedy on the bond, the payment of such obligation extinguished its right to sue the Schliep estate, and by reason thereof no right of subrogation exists.

Plaintiff's claim is based upon the equitable doctrine of subrogation. "Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold as against the principal debtor and by the use of which the party paying may thus be made whole. This equity may be used to enforce the equity of exoneration as against the principal debtor, or of contribution as against others who are in the same rank." Bispham's Principles of Equity (9th Ed.) section 335.

Subrogation is said to be "the creature of equity, and is so administered as to secure real and essential justice without regard to form, and is independent of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, * * * and it is not allowed where it would work any injustice to the rights of others." Sheldon on Subrogation, section 1.

This doctrine is also recognized by section 11667 of the Code, which provides:

"When the principal and surety are liable for any claim, such surety may pay the same, and recover thereon against all liable to him. If a judgment against principal and surety has been paid by the surety, he shall be subrogated to all the rights of the creditor, and may take an assignment thereof, and enforce the same by execution or otherwise, as the creditor could have done."

"Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability." Gerseta Corporation v. Equitable Trust Co., 241 N. Y. 418, 150 N. E. 501, 43 A. L. R. 1320.

A surety for an administrator, executor, or trustee will be subrogated to the rights and remedies of creditors or beneficiaries against the principal, or his property. 60 C. J. 773, sec. 83, note 23; Weyant v. Utah Sav. & Trust Co., 54 Utah 181, 182 P. 189, 9 A. L. R. 1119.

"A surety, on paying the debt of the principal, is entitled to be subrogated to the rights of the creditor in all or any of the securities, means, or remedies which the creditor has for enforcing payment against his principal." 25 R. C. L. 1327; 60 C. J. 740; Kent v. Bailey, 181 Iowa 489, 164 N. W. 852; Heuser v. Sharman, 89 Iowa 355, 56 N. W. 525, 48 Am. St. Rep. 390; Millowners' Mut.

Life Ins. Co. v. Goff, 210 Iowa 1188, 232 N. W. 504; Randell v. Fellers, 218 Iowa ......, 252 N. W. 787; Leach v. Com. Sav. Bank, 205 Iowa 1154, 213 N. W. 517; City v. Love, 31 Iowa 119; Searing v. Berry et al., 58 Iowa 20, 11 N. W. 708; Bankers Surety Co. v. Linder, 156 Iowa 486, 137 N. W. 496; Jackson Co. v. Boylston Mut. Ins. Co., 139 Mass. 508, 2 N. E. 103, 52 Am. Rep. 728; Gerseta Corp. v. Equitable Trust Co., 241 N. Y. 418, 150 N. E. 501, 43 A. L. R. 1320; Pittsburgh-Westmoreland Coal Co. v. Kerr, 220 N. Y. 137, 115 N. E. 465. As tending to show that this is the universal rule in America, see cases cited in 25 R. C. L. 1327, note 1.

In Kent v. Bailey, supra, loc. cit. 493, we said:

" 'Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.' Jackson Co. v. Boylston Mut. Ins. Co., supra. See Heuser v. Sharman, supra. It has been styled a legal fiction whereby an obligation which has been discharged by a third person is treated as still subsisting for his benefit, so that by means thereof one creditor is substituted to the rights, remedies, and securities of another. Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 S. Ct. 625, 31 L. Ed. 537.   *   *   *   The books agree that subrogation is not founded on contract or privity or strict suretyship, but is born of equity, and results from the natural justice of placing the burden where it ought to rest. The remedy depends upon the principles of justice, equity, and benevolence to be applied to the facts of the particular case. It is of equitable origin, adopted to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.   *   *   *   The remedy is to be administered according to the established rules of equity jurisprudence. Sheppard v. Messenger, 107 Iowa 717, 77 N. W. 515; Seieroe v. Homan, 50 Neb. 601, 70 N. W. 244."

In the recent case of Randell v. Fellers, supra, we said:

"The doctrine is universally applied in behalf of a surety who has been compelled to pay the debt of his principal."

Appellee claims, however, that, as the administrator of the Taft estate, before commencing any action against the surety company, had a right to elect to bring his action to recover the loss against

either the estate of William Schliep, deceased, or against the surety on the bond, and having elected the remedy against the surety on the bond, all other rights have been extinguished.

The doctrine of equitable subrogation, however, is subject to the limitation that it will not apply where the equities are not in favor of the surety, because the doctrine is always used for the promotion of justice and the prevention of inequitable results. It will never be enforced, when doing so would be inequitable, or where it would work injustice to others having equal equities. Makeel v. Hotchkiss, 190 Ill. 311, 60 N. E. 524, 83 Am. St. Rep. 131, 37 Cyc. 370. It necessarily follows that the equities of one seeking subrogation must be greater than those of him against whom subrogation is sought. Ft. Dodge B. & L. Assn. v. Scott, 86 Iowa 431, 53 N. W. 283. The doctrine of subrogation never interferes with equal or superior rights of others. Vaughan v. Jeffreys, 119 N. C. 135, 26 S. E. 94.

Appellee, in support of its contention that the debt in question has been extinguished by the action of the new administrator of the Taft estate, in recovering from the surety, cites Baker v. American Surety Co., 181 Iowa 634, 159 N. W. 1044, 1046, and National Surety Co. v. Bankers Trust Co., 210 Iowa 323, 228 N. W. 635. A careful reading of these cases, however, fails to show such a doctrine. In the Baker case the surety company was surety upon the bond of the treasurer of the "Buxton Local Union". The treasurer of that union had deposited the funds of his union in the Buxton Savings Bank. These funds were wrongfully withdrawn by the treasurer upon forged orders. In that situation the union had a remedy either against the surety on the bond or against the Buxton Savings Bank because of wrongfully paying out funds on forged orders. The surety sought to be subrogated to the rights of the union against the Buxton Savings Bank. That case was in fact decided upon equitable principles. The action of the bank was not, in itself, dishonest. The money was paid out by it upon the forged orders of the treasurer, in the belief they were genuine. The court there said:

"The wrongful diversion of these moneys was induced by the dishonest conduct of Brown to whom the money was paid, and were the bank held for the payment of the funds dissipated it would have a cause of action against Brown therefor. The plain difference in the situation of the two is that were recovery had by the local union

against Brown he could not recoup in an action against the bank, whereas the bank, if compelled to restore to the union the moneys paid on the forged instruments might demand reimbursement from Brown and upon refusal recover judgment against him."

In that case there could have been no recovery by Brown against the bank because of his own wrongful act in inducing the bank to pay out the money. In the case at bar the administrator of the Taft estate had a right to sue the Schliep estate for the money received by that estate. In the Baker case there were no equities in favor of the treasurer as against the bank. Therefore it was held there could be no subrogation. In the case at bar the equities are in favor of the administrator of the Taft estate as against the Schliep estate. There would be no loss to the Schliep estate by requiring it to pay the funds received by it from the administrator of the Taft estate. The Baker case is not authority for the doctrine that the cause of action of the obligee in the bond against the Schliep estate was extinguished by the payment of the forgeries by the surety company. Nor is the National Surety Co. v. Bankers Trust Co., supra, authority for the doctrine contended for. In that case there was an assignment of the obligee's rights therein to the surety company, and the right of subrogation was considered immaterial.

Appellee also contends that plaintiff had no right of subrogation because it was a *paid* surety. It is the general rule as expressed by the greater weight of authority that, although its business is that of writing surety bonds for compensation, nevertheless, "when it issued the bond it became a surety and the fact that it was a compensated surety is immaterial." The rights of a surety are to be determined by its legal status as a surety and not by the reason which may have induced it to enter into that status. In other words, the fact that the defendant was a surety for compensation did not deprive it of its rights under the rules governing the relation of principal and surety. 25 R. C. L. 1327; 21 R. C. L. 1162; Wasco County v. New England Equitable Ins. Co., 88 Or. 465, 172 P. 126, L. R. A. 1918D 732, Ann. Cas. 1918E 656; 19 Cyc. 893. There is no distinction in this respect between compensated and gratuitous sureties. The question as to what induced the surety to assume the obligation cannot be considered in determining his rights. 25 R. C. L. 1327; Lewis' Adm'r v. U. S. Fidelity & Guaranty Co., 144 Ky. 425, 138 S. W. 305, Ann. Cas. 1913A 564.

A surety engaged in suretyship as a business enterprise, after being required to pay its obligation, as such, on a bond, whether compensated or not, is entitled to the benefits of the doctrine of "equitable subrogation" to the same extent as a gratuitous surety. 60 C. J. 742. The reason for this rule is that: "A court of equity grants the right of subrogation because the surety has paid the debt of the principal, and the right of subrogation is not dependent upon whether the surety was or was not paid to sign the bond. It is enough that the surety was obliged to pay and did pay the debt." Wasco County v. New England Equitable Ins. Co., 88 Or. 465, 172 P. 126, 128 L. R. A. 1918D 732, Ann. Cas. 1918E 656; U. S. Fidelity & Guaranty Co. v. Rathbun, 160 Minn. 176, 199 N. W. 561; In re Dutcher (D. C.) 213 F. 908; State v. Kilgore State Bank, 112 Neb. 856, 201 N. W. 901.

Without continuing the discussion further, it is sufficient to say that the surety company comes within the equitable doctrine of subrogation, and by that doctrine is entitled to subrogation to the rights of the administrator of the Taft estate, against the administrator of the Schliep estate for the funds of the Taft estate wrongfully paid to and used in and for the Schliep estate. There can be no question but that under the Iowa statute above referred to, and the doctrine of equitable subrogation, the plaintiff was entitled to all the rights of the creditor, and could enforce them in the same manner in which they could have been enforced by the creditor.

For these reasons we believe the motion to dismiss should have been overruled. The case is therefore hereby reversed and remanded for further proceedings in harmony herewith.—Reversed and remanded.

. CLAUSSEN, C. J., and STEVENS, MITCHELL, ANDERSON, KINDIG, and ALBERT, JJ., concur.