NIELS SEIEROE, APPELLEE, V. WILLIAM R. HOMAN, IM-
PLEADED WITH CENTRAL LOAN & TRUST COMPANY
ET AL., APPELLANTS.

FILED FEBRUARY 16, 1897.    No. 7014.

1. **Subrogation:** PAYMENT OF SUPERIOR MORTGAGE: MISTAKE. The
right of subrogation exists in favor of a creditor who has paid the
amount of a mortgage or other incumbrance in order to protect
his own subordinate lien, or when as the holder of such subordi-
nate lien he has, through mistake or inadvertence, satisfied a prior
lien upon the property covered thereby.

2. ———: EXISTENCE OF RIGHT. The right of subrogation must in
every case rest upon some recognized principle of equity jurispru-
dence, such as a mistake of fact, an agreement or understanding
that the money advanced was for the express purpose designated,
or the like. (*Bohn Sash & Door Co. v. Case*, 42 Neb., 281.)

3. ———: ———. Evidence examined, and *held* to sustain the findings
of the referee and the decree based thereon.

APPEAL from the district court of Douglas county.
Heard below before FERGUSON, J.    *Affirmed.*

The opinion contains a statement of the case.

*Wharton & Baird*, for appellants:

The court erred in applying to the case at bar the doc-
trine announced in *Bohn Mfg. Co. v. Kountz*, 30 Neb., 719.
(*Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207; *Holmes
v. Hutchins*, 38 Neb., 601; *Pickens v. Plattsmouth Invest-
ment Co.*, 37 Neb., 272; *Hoagland v. Lowe*, 39 Neb., 397.)

References as to right of subrogation: *Johnson v. Bar-
rett*, 117 Ind., 551; *Gilbert v. Gilbert*, 39 Ia., 657; *Fears v.
Albea*, 69 Tex., 437; *Walker v. King*, 44 Vt., 601; *Wheeler
v. Willard*, 44 Vt., 640; *Robinson v. Erquhart*, 12 N. J. Eq.,
524; *Tradesmen's Building, etc., Ass'n v. Thompson*, 32 N. J.
Eq., 133; *Guthrie v. Ray*, 36 Neb., 612; *Blodgett v. Hitt*, 29
Wis., 169; *Valle's Heirs v. Fleming's Heirs*, 29 Mo., 152;
*Levy v. Martin*, 48 Wis., 198; *Wilton v. Mayberry*, 75 Wis.,
191; *Payne v. Hathaway*, 3 Vt., 212; *Bruse v. Nelson*, 35
Ia., 157.

*B. G. Burbank, V. O. Strickler, W. H. De France, Kennedy & Learned, J. W. West, B. N. Robertson, E. W. Simeral, Lysle I. Abbott, Montgomery, Charlton & Hall, Elmer E. Thomas, Parke Godwin, Tiffany & Vinsonhaler,* and *B. F. Thomas, contra.*

POST, C. J.

Suit was commenced in the district court for Douglas county by Niels Seieroe against William R. Homan for the foreclosure of a mechanic's lien upon lot 1, in block 362, in the city of Omaha, the facts alleged as the plaintiff's cause of action being substantially as follows: On the 1st day of April, 1890, the plaintiff entered into a contract with Homan, as owner of the premises above described, whereby he agreed to furnish certain material and perform certain labor in the erection of six three-story brick and frame apartment houses upon said premises for the sum of $10,221, payable upon estimates of the architect. It was further provided in said contract that for all extra brickwork plaintiff should receive $9.50 per thousand, wall measure, for extra work in excavating 20 cents per cubic yard, and for extra concrete work $5 per cubic yard; that plaintiff, prior to March 30, 1891, furnished all of the material and performed all of the labor provided for in said contract, and in accordance with the terms and conditions thereof, and that he furnished extra material and performed extra labor under said contract, upon the demand of the owner and the architect, amounting to $1,672.50, making a total charge of $11,893.50, which is reduced by payments credited $9,602.50, leaving a balance of $2,291, for which decree was sought. It was further alleged that the plaintiff, on the 28th day of July, 1891, and within four months after the furnishing of such material and labor, made an account in writing of the items of the labor and material so furnished under said contract, and, after making oath thereto as required by law, filed the same in the office of

the register of deeds for Douglas county, claiming a lien upon the property above described. To said petition Clarence A. Starr, the Central Loan & Trust Company, the Home Investment Company, the Insurance Company of North America, William D. Windsor, James D. Windsor, James Morton & Son, John J. Hannighen, John A. Lindquist, Charles Hill, W. H. Bell, John Upton, Edward Ericksen, J. A. Fuller & Co., and Milton Rodgers & Sons were also made defendants.

The pleadings subsequently to the petition are exceedingly voluminous, covering more than one hundred and thirty printed pages, hence a statement of their contents must be confined to a bare outline of the issues presented. Homan, the owner, answered admitting the plaintiff's claim in part, but alleging defective workmanship and a failure to complete the buildings within the specified time, and praying judgment in the sum of $2,400, but since he has failed to appeal from the decree in plaintiff's favor, it is unnecessary to notice the issues tendered by him. The Central Loan & Trust Company, which will hereafter be referred to as the "trust company," filed answer, in which, after a denial of the essential allegations of the petition, it alleges that Homan and wife, on the 1st day of April, 1890, executed in its favor two mortgages upon the property in controversy, to-wit, one for $30,000, to secure the bond of the said William R. Homan, payable June 1, 1897, with interest from date at the rate of six per cent, and one for $2,100, to secure the note of the said William R. Homan, payable in fourteen semiannual installments of $150 each, without interest, and which said mortgages were filed for record April 21, 1890; that on the 11th day of June, 1890, the plaintiff executed the following waiver:

"We, the undersigned, taking full notice of the fact that the Central Loan & Trust Company, of Des Moines, Iowa, are making a loan of $32,100 to Wm. R. Homan, secured by mortgage on the following described property, to-wit, lot 1, block 362, city of Omaha, and a strip

twenty feet wide adjoining on east, do hereby consent and agree that any right we now have, or which may accrue up to 6 o'clock P. M. of November 1, 1890, to file a mechanic's lien against said property shall be, and the same is hereby, junior and subject to the lien of the mortgages to said Central Loan & Trust Company. Expecting to receive a part of the proceeds of said loan, we make the above agreement in order to enable said Wm. R. Homan to proceed with the negotiations with said company. It being understood and agreed that this agreement in no manner divests us of our rights to file mechanic's liens against said property, except as above stated.

"Dated at Omaha, Neb., this 11th day of June, 1890.

"N. SEIEROE,
"*Brick Contractor.*"

It is further alleged by the said trust company that on December 1, 1890, it loaned to Homan the further sum of $3,000, and canceled and acknowledged satisfaction of the two mortgages above described, taking in lieu thereof three first mortgages upon several equal portions of the premises in controversy for $10,000, $11,000, and $12,000, respectively, also second mortgages upon said several tracts for $700, $770, and $840, respectively, and which mortgages were all filed for record December 9, 1890, that the release of the mortgages first above described was an act of inadvertence on the part of the said trust company, and that plaintiff and all persons furnishing labor and material for the erection of said buildings had notice that the mortgage debts were not in fact paid. Accompanying said answer is a prayer for an accounting and decree of foreclosure in favor of the said trust company as trustee for its co-defendant, the Insurance Company of North America, of the $10,000 mortgage above described, an accounting and decree of foreclosure in its favor, as trustee for defendant James D. Windsor, of the $11,000 mortgage above described, and an accounting and decree of foreclosure in its favor, as trustee for de-

fendant William D. Windsor, of the aforesaid $12,000 mortgage; also for an accounting and decree of foreclosure in its own right of the three second or commission mortgages above described, and for the additional sum of $247.27, being taxes paid by it upon the mortgaged property. There is also a further prayer for a decree adjudging the $30,000 mortgage above described to be a valid first lien in favor of said trust company as trustee of the Insurance Company of North America, James D. Windsor, and William D. Windsor, and that the aforesaid $2,100 mortgage be declared to be a valid second lien in its favor in its own right.

To this answer and cross-bill the plaintiff replied admitting the execution of the two mortgages by Homan and wife for $30,000 and $2,100, respectively, and alleging that said mortgages were paid in full on or prior to January 17, 1891, on which day they were by the trust company canceled and satisfied of record; that the plaintiff's signature to the written waiver above set out was procured by means of false representations of the said trust company to the effect that it, the said company, was about to advance to Homan the sum of $30,000 to be used in the construction of the buildings herein described, and that plaintiff would be paid therefrom the full amount due by virtue of said contract, including extras, whereas the sum of $10,000 and more of said amount was by said company and Homan diverted from said use and expended for purposes entirely foreign to the improvements contemplated in said waiver; that on the date of the execution of said waiver, to-wit, June 11, 1890, there was due plaintiff, under his contract with Homan, the sum of $7,250, and that if the full sum of $30,000 had been expended in the construction of said buildings it would have satisfied the lawful claims of contractors and laborers, including the plaintiff. It is also, in effect, alleged that the waiver in question applied to mortgage liens, aggregating $32,100, upon the lot as an entirety, and that the plaintiff has never been willing that his claim

should be subordinated to mortgage liens aggregating $35,350 upon fractional parts thereof.

The Windsors and the Insurance Company of North America filed answers, each alleging the purchase of one of the three notes executed by Homan to the trust company, December 1, 1890; that by agreement with the said company the latter was, in its capacity as trustee, authorized in their behalf to prosecute any action or actions for the foreclosure of the mortgages given to secure said notes. They also allege that the prior mortgages were canceled and discharged of record through inadvertence of the trust company, and ask that the said mortgages may be foreclosed in accordance with the prayer of the said trustee. The other defendants, with the exception of Starr, to whom reference will hereafter be made, answered alleging liens superior to the several mortgages herein described, but as the vital question of the controversy appears from the issues made by the plaintiff and the defendants claiming under the mortgages, it will not be necessary to prolong this statement by further reference to the pleadings.

Upon the completion of the issues, the cause was, by agreement, submitted to Hon. D. D. Gregory, upon whose report and finding a decree was entered for the plaintiff, and also for defendants Lindquist, Ericksen, Fuller & Co., Morton & Son, and Hannighen, who were adjudged entitled to first liens and to prorate with each other, and from which the said trust company, in its own right and as trustee for the Windsors and the insurance company, have prosecuted an appeal to this court.

The referee's report, so far as it is material to the questions discussed on this appeal, is here set out:

"Your referee finds in regard to the issues raised upon the cross-petition of the Central Loan & Trust Company praying the foreclosure of its several mortgages, that the testimony establishes the following facts:

"First—That at the instance of the defendant Homan, the Central Loan & Trust Company loaned the sum of

$30,000 and took a mortgage bond and mortgage upon said premises to secure said amount of the date of April 1, 1890, and additional mortgage to secure the sum of $2,100 which was designated as for commissions due the Central Loan & Trust Company in the negotiation of said loan and represented the difference between six and seven per cent interest for the life of the first mortgage, seven per cent per annum being the amount for which the original loan was contracted. That these two mortgages were duly recorded in the recorder's office of Douglas county, Nebraska, on April 21, 1890.

"Second—That upon the 11th day of June, 1890, Seieroe, the plaintiff, waived his right of priority to any mechanic's lien which might accrue prior to November 1, 1890, in favor of the Central Loan & Trust Company for $32,000. The consideration expressed for the waiver was the expecting to receive a portion of the proceeds of said loan.

"Third—In like manner, upon the 28th day of August, 1890, J. J. Hannighen made waiver of the priority of lien to said Central Loan & Trust Company under the same terms and conditions.

"Fourth—The testimony further shows that the defendant Homan desiring additional money, and the Central Loan & Trust Company preferring that the mortgage of $30,000 be divided into separate mortgages of smaller sums, did, at the date of December 1, 1890, obtain three additional mortgages from said Homan to secure the three several amounts, one for $12,000, one for $10,000, and one for $11,000. The said several mortgages were given upon three several sections of forty-four (44) feet front each of the premises in controversy, and at the time there was also made three commission mortgages, one for $840, one of $700, and one of $770, which mortgages were severally given to secure the sums named for the difference between six and seven per cent, the original loan being made at seven per cent per annum, and the three several mortgages were severally placed upon the

divisions named, and that all of said mortgages were
duly recorded upon the 9th day of December, 1891, and
that in consideration of the execution and delivery of
these mortgages the Central Loan & Trust Company duly
canceled of record the $30,000 mortgage and the $2,100
mortgage, and treated the loan of $30,000 and the com-
mission mortgage pertaining to it, as paid and dis-
charged.

"Fifth—It is further shown from the evidence that at
the time of the execution of the first mortgage of $32,100
there was a prior mortgage upon said premises amount-
ing to $10,181, held and controlled by Bates, Smith & Co.,
and that the first moneys out of the said loan of $30,000
was taken and used in the discharge of such mortgage as
a prior incumbrance. It further appears in evidence that
the Central Loan & Trust Company paid over the money
directly to Homan without assuming any direction as to
its application or use, or possessing any accurate knowl-
edge as to the state of the account between Homan and
his contractors, basing their priority of lien upon the
waiver of the principal contractors engaged in the erec-
tion of said buildings, and that the three mortgages were
taken in place of and represented the money of the first
mortgage of $30,000, save and except as to the $3,000 ad-
ditional advances.

"The Central Loan & Trust Company, for itself and in
behalf of the assignees of said mortgages, William D.
Windsor, the Insurance Company of North America, and
James D. Windsor, ask that their interest be subrogated
to that of the first mortgage of $30,000.

"First—Your referee finds as a matter of law that sub-
rogation will be allowed to a creditor when he has paid
off a prior lien to protect an existing junior lien, or when
as a creditor he has discharged a lien through inadvert-
ence or mistake, in that a court of equity could say in
conscience and good morals that he should be subrogated
to the right of the holder of such prior lien. But subro-
gation is not allowed to volunteers nor to strangers, and

never to intermeddlers; nor is it the province of a court of equity to relieve parties from their mistake of judgment, carelessness, or mistake of law in entering into a contract.

"Second—The Central Loan & Trust Company is charged in law with the full knowledge of every fact that existed at the time of this exchange of mortgages, and for the purpose of its own accommodation voluntarily entered into a new contract with the defendant Homan, and in consideration of the additional loan of $3,000 Homan was induced to make six several mortgages, as before stated, upon the cancellation of the two mortgages that had been executed prior thereto. No inadvertence or mistake of fact is shown by which the Central Loan & Trust Company was misled or deceived as to any existing fact. Consulting its own convenience and deeming it to its own advantage to hold six several mortgages instead of two, it accepted the same as executed by Homan for and in discharge of the pre-existing mortgages. Your referee therefore finds no equities in favor of the Central Loan & Trust Company upon which this claim for subrogation in law can rest, and recommends that the prayer of the Central Loan & Trust Company, in so far as it asks to be subrogated to the right of mortgagee the first named, be denied.

\*      \*      \*      \*      \*      \*      \*

"Your referee further finds that the Central Loan & Trust Company has paid taxes upon the property in question from time to time, amounting in all, principal and interest, up to the first day of this term of court, to the sum of $631. But your referee further finds that Clarence A. Starr, acting as trustee of the said property and in interest of the Central Loan & Trust Company, received the sum of $5,000 as rentals therefrom, and in good conscience the duty rested upon said trustee to have first paid the said taxes out of said rentals, and that the lien for taxes should be subordinate of claims of all other lien-holders, but that the course of conduct having been

acquiesced in by William R. Homan, the Central Loan & Trust Company as to him would be entitled to a lien upon said premises for the amount and foreclosure therefor, and as well as to the respective sums in the six mortgages hereinbefore set forth."

We will first notice the argument of appellants which is directed to the alleged waiver by the plaintiff. Several propositions are discussed in this connection, all of which depend upon the effect to be given the release by the trust company of the prior mortgages. Appellants, in their discussion of the question above indicated, invoke with seeming confidence the doctrine of subrogation, and insist upon priority over the liens for labor and material, on the ground that the proceeds of the prior mortgages were, with the knowledge of appellees, expended in the construction of the building mentioned, thus by the amount thereof increasing the security of the latter; but to that proposition we are unable to give our assent. On the contrary, it is clear from the findings above quoted that there are in this case no facts upon which to base the right of subrogation. There must, as was held in the recent case of *Bohn Sash & Door Co. v. Case*, 42 Neb., 281, as a condition to the right of subrogation, in addition to the inherent justice of the case, concur therewith some established principle of equity jurisprudence as recognized and enforced by courts of chancery. Indeed, the conclusion of the learned referee in passing upon that question is a treatise of itself, and has abundant support in the decisions of other courts. (*Shinn v. Budd*, 14 N. J. Eq., 234; *Receivers of New Jersey M. R. Co. v. Wortendyke*, 27 N. J. Eq., 660; *Unger v. Leiter*, 32 O. St., 210; *Banta v. Garmo*, 1 Sandf. Ch. [N. Y.], 383; *Sandford v. McLean*, 3 Paige [N. Y.], 122; *Marvin v. Vedder*, 5 Cow. [N. Y.], 671.) To review at length in this connection the cases cited by appellants would prove a profitless task. It is sufficient that they in nowise conflict with the conclusion of the referee or the views expressed by us in *Bohn Sash & Door Co. v. Case, supra.* The record, so far as it sheds any light

Seieroc v. Homan.

upon the execution of the six mortgages bearing date of December 1, 1890, and the satisfaction of the two prior mortgages, lends no support to the contention of appellants. There is not alone a failure of proof to sustain the allegations that the prior mortgages were discharged through inadvertence or mistake, but the irresistible inference from the evidence is that the arrangement in question was deliberately made by the trust company as mortgagee, and for its own accommodation, and to enforce the canceled mortgages at this time for its protection would be to violate the plainest principles of equity.

There is a further contention to the effect that plaintiff's lien was not filed within the statutory period after the furnishing of the material and labor which is the basis of this claim. The referee has found specifically that the lien was filed within four months from and after the completion of the contract, and an examination of the record has satisfied us that that finding is in accord with the decided weight of the evidence. The lien, as we have shown, was filed July 28, 1891, and the last work, being the construction of certain brick piers and area walls called for by the plans and specifications, was completed April 7 of the same year.

What is said above applies with equal force to the claims of other defendants whose liens were by the decree given priority over the mortgages of appellants. No sufficient reason has been suggested for interference with the decree of the district court, which is accordingly

AFFIRMED.