CUESTA, REY & COMPANY, *Appellant*, v. JOHN A. NEWSOM, as Liquidator, et al., *Appellee*.

136 So. 551.

Division A.

Opinion filed August 7, 1931.

Petition for rehearing denied September 14, 1931.

*Altman, Morrow & Cooper,* for Appellant;
*Jackson, Dupree & Cone,* for Appellees.

BUFORD, C.J.,—Cuesta, Rey & Company, being indebted to the United States Government for the payment of certain revenue taxes, made a check payable to the Collector of Internal Revenue for the District of Florida (Peter Miller of Jacksonville, Florida) for the sum of $1887.60. The check was drawn on Citizens Bank & Trust Company of Tampa and at the request of the drawer, Cuesta, Rey & Company, the Bank certified the check. Cuesta, Rey & Company thereupon tendered and delivered the certified check to Peter Miller as Collector of Internal Revenue as payment for such internal revenue taxes due the Federal Government. Peter Miller, as Collector of Internal Revenue of the United States for the State of Florida, endorsed the check to Jacksonville Branch, Federal Reserve Bank of Atlanta. Before Federal Reserve Bank of Atlanta could present the check to Citizens Bank & Trust Company of Tampa for payment the Citizens Bank & Trust Company became insolvent and was taken over by the Comptroller. John A. Newsom was appointed and qualified as Liquidator for the Citizens Bank & Trust Company. The Citizens Bank & Trust Company, on account of its failure, did not pay the check and, upon failure of the Bank to pay the check, Cuesta, Rey & Company was called upon to pay the same and on the 29th day of July, twelve days after the closing of the Bank, paid the entire amount of the check to the said Collector of Internal Revenue and the United States Government thereupon surrendered the check to Cuesta, Rey & Company who is now the owner and holder thereof.

Cuesta, Rey & Company demanded payment in full of the amount of the check of the Liquidator as a preferred and secured claim. The Liquidator refused to pay the same.

Suit was brought by Cuesta, Rey & Company in equity to enforce the payment by the Liquidator of the amount of the check, the theory of the suit being that when the Bank certified the check and the check was delivered so certified to Peter Miller, the proper and authorized agent of the United States Government, in payment of the tax, that Citizens Bank & Trust Company became the primary debtor by reason of its certification of the check, and Cuesta, Rey & Company became secondarily liable for the obligation and that when the Bank failed to pay the check and Cuesta, Rey & Company paid the check in full that it became subrogated in equity to the rights of the payee and to all securities operating in favor of the payee for the payment of the check as against the primary obligor.

Demurrer was filed to the bill of complaint and sustained apparently upon the theory that Cuesta, Rey & Company was not entitled to subrogation.

The question here presented has never come before this Court for determination before and we have been unable to find where the same state of facts has been presented to any other Court of last resort. However, we think that the principles of law applicable to this case are clearly defined by this and other courts and that the proper answer to the question involved is not in doubt.

If the check had been certified after delivery to the payee then the drawer, Cuesta, Rey & Company, would have been discharged from any obligation thereon.

In the case of Bank of Bay Biscayne vs. Bell, 99 Fla. 745, 128 Sou. 491, this Court said:

"The principle is that a certificate of a bank that a check is good is equivalent to acceptance. See Sec. 6926 C. G. L. 1927; Merchants National Bank vs State National Bank, 10 Wall, 604, 19 L. ed. 1008; First National Bank vs. Whitman, 4 Otto. 343, 24 L. ed. 229; Metropol-

itan National Bank of Chicago vs Jones, 137 Ill. 634, 27 N. E. R. 533, 31 Am. St. R. 403, 12 L. R. A. 492; Minot vs Russ, 156 Mass. 458, 31 N. E. R. 489, 32 Am. St. Re. 472, 16 L. R. A. 510; Detroit First National Bank vs Currie, 147 Mich. 72, 110 N. W. R. 499, 118 A. S. R. 537, 9 L. R. A. (N. S.) 698; Jackson Paper Mfg. Co. vs. Commercial Nat. Bank, 199 Ill. 151, 65 N. E. R. 136, 93 Am. St. R. 113, 59 L. R. A. 657.''

In that case the Court quoted with approval the reasons for the rule as expressed in the opinion in the case of Merchants National Bank vs. State National Bank, 10 Wall, 604, 19 L. ed. 1008, in which it was said:

"The object of certifying a check as regards both parties is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the Bank. It is available also to him for all the purposes of money. Thus it continues to perform its important functions until in the course of business it goes back to the Bank for redemption and is extinguished by payment.

It cannot be doubted that the certifying bank intended these consequences and it is liable according. To hold otherwise would render these important securities only a snare and delusion."

In support of the rule the following authorities are cited: Bickford v. Nat. Bank, 42 Ill. 238; Willets v. Phoenix Bk., Duer, 121; Barnet v. Smith, 10 Fost. (N. H.) 256; Meads v. Mech. Bk., 25 N. Y. 146; Far. & Mech. Bk. v. Butchers' and Drov. Bk., 4 Duer, 219; Far. and Mech. Bk. v. Butchers' and Drov. Bk., 14 N. Y. 624; Brown v. Lecki, 43 Ill. 497; Gir. Bk. v. Bk. of Penn., 39 Pa. St. 92.

Section 4840 R. G. S., 6296 C. G. L., provides as follows:

"Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance."

Section 4841 R. G. S., 6927 C. G. L., is as follows:

"Where the holder of a check procures it to be accepted or certified, the drawer and all endorsers are discharged from liability thereon."

Section 4842 R. G. S., 6928 C. G. L., is as follows:

"A check of itself does not operate as an assignment

of any part of the funds to the credit of the drawer with the bank; and the bank is not liable to the holder unless and until it accepts or certifies the check.''

The opinion in the case of Amos, Comptroller, vs. Baird, 96 Fla. 181, 117 Sou. 789, does not control in this case because in this case equities have arisen and become potent which do not exist in that case. The first question to be determined here is, What was the relation of Cuesta, Rey & Company to the United States Government and what was the relation of Citizens Bank & Trust Co. to the United States Government when the check drawn by Cuesta, Rey & Company had been certified by Citizens Bank & Trust Company and delivered to the authorized agent of the United States Government to whom it was payable for taxes due to the United States Government.

It appears to be well settled in the opinion of text-writers and by the opinions and judgments of courts of the last resort that the accepter of a bill is the principal debtor and the drawer the surety and nothing will discharge the accepter but payment or release. He is bound though he accepted without consideration and for the sole accommodation of the drawer. Defenses to Commercial Paper, Joyce, Vol. 1, Sec. 426, p. 572; Wilson vs. Isobel, 45 Ala. 142.

It is also settled that ''by certifying a check, the bank thereby assumes the primary liability to the holder for payment. The certification is equivalent to the acceptance of a bill of exchange payable on demand and the obligation of the Bank is subsequently the same as that assumed by the accepter of such a bill. It creates an original actionable liability against the Bank, imports that the check is drawn upon sufficient funds which will be retained to pay upon a check whenever it is presented.'' Bickford v. First Nat. Bank, 42 Ill. 238, 89 Am. Dec. 436, and note; Drovers' Nat. Bank v. Anglo-American Packing Co., 117 Ill. 100, 57 Am. Rep. 855, 7 N. E. 601; Louisiana Ice Co. vs. State Nat. Bank, 1 McGloin (La.) 181; Farmers' etc. Bank v. Butchers'

etc. Bank, 16 N. Y. 125, 69 Am. Dec. 678; Meads v. Merchants' Bank, 25 N. Y. 143, 82 Am. Dec. 331; Farmers' etc. Bank v. Butchers' etc. Bank, 28 N. Y. 425, 26 How. Pr. 1; Willets v. Phoenix Bank, 9 N. Y. Super. Ct. (2 Duer) 121; Blake v. Hamilton Dime Sav. Bank, 79 Ohio St. 189, ante. p. 684, 87 N. E. 73; Merchants' Bank of Valdosta v. Baird, 160 Fed. 642; McIntyre et al. vs. Raskin, Ct. of Appeals of Ga., filed November 15, 1930, reported 155 S. E. 799; Banks and Banking, Michie, Vol. 2, Sec. 145, p. 1176; Capital City Insurance Co. v. Quinn, 73 Ala. 558.

The Bank having by its acceptance and the delivery of the certified check to the payee become the primary obligor and the obligation having been thereafter fully paid by the secondary obligor, the question to be determined is whether or not the secondary obligor by the payment of the obligation which it was in duty bound to pay, entitled such secondary obligor to subrogation of the lien of the payee created by Federal Statute on the assets of the Bank.

Section 109, Title 26 of the Federal Internal Revenue Act provides:

"Payment of Taxes; Certified Checks; Ultimate Payment.—It shall be lawful for collectors of internal revenue to receive for internal taxes and all public dues certified checks drawn on National and State banks, and trust companies during such time and under such regulations as the Secretary of the Treasury may prescribe. No person, however, who may be indebted to the United States on account of internal taxes who shall have tendered a certified check or checks as provisional payment for such duties or taxes in accordance with the terms of this section, shall be released from the obligation to make ultimate payment thereof until such certified check so received has been duly paid; and if any such check so received is not duly paid by the bank on which it is drawn and so certifying, the United States shall in addition to its right to exact payment from the party originally indebted therefor, have a lien for the amount of such check upon all the assets of such bank; and such amount shall be paid out of its assets in preference to

any or all other claims whatsoever against said bank, except the necessary costs and expenses of administration and the reimbursement of the United States for the amount expended in the redemption of the circulating notes of such bank.''

In Pomeroy's Equitable Remedies, 2nd ed., Vol. 5, section 2345, the writer says:

''Whenever a party discharges an obligation in performance of a legal duty—that is an obligation for the performance of which he was legally bound—but for which his liability was subsequent to that of another party, he is entitled to be subrogated to, and to have the benefit of, all rights of the creditor and all securities which may at any time have been put into the creditor's hands by a party whose liability is prior to his own, or which the creditor may have obtained from such party.''

And in section 2351 the same author says:

''The subrogee is, in general, entitled to stand in the shoes of the creditor, and to enforce every right which the creditor himself could have enforced, so far as necessary to secure reimbursement or contribution. This includes the right to enforce the principal obligation itself, even though it be discharged at law, and to claim all of the incidents of such obligation.''

In the case of Boley v. Daniel, 72 Fla. 121, 72 Sou. 644, this Court, speaking through Mr. Justice Whitfield, said:

''Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.

Subrogation arises by operation of law where one having a liability or a right or a fiduciary relation in the premises, pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.

This is called legal subrogation.

Conventional subrogation depends upon a lawful contract and occurs where one having no interest in or relation to the matter, pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid.''

In Lovingood vs. Butler Construction Co., decided No-

vember 15, 1930, reported 131 Sou. 126, this Court speaking through Mr. Justice Ellis, said:

"Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. There is a legal subrogation and a conventional subrogation. There was no legal subrogation because the complainant had no liability or right of a fiduciary relation in the premises. Nor was there a conventional subrogation because there was no agreement between the complainant and Lovingood that the former should be entitled to the securities and rights of the creditor so paid. See Boley v Daniel, 72 Fla. 121, 72 Sou. 644, L. R. A. 1917-A, 734.

The case of Forman v First Nat. Bank of Quincy, 76 Fla. 48, 79 Sou. 742, is not authority in this case, because in the case cited Forman advanced the money to Guyton for the purpose of paying off a mortgage made by Guyton to Burgess & Co. and to pay two judgments against Guyton under an agreement with Guyton that the mortgage to Forman to secure the payment of the money advanced should constitute a lien superior to the lien of a mortgage which Guyton had given to Carter and which was inferior to the Burgess mortgage. The decision proceeded upon the theory that the agreement was equivalent to one that the Burgess mortgage should be kept alive for the benefit of Forman.

The general rule regarding subrogation of liens that may exist in favor of laborers under the statute is that one who lends money to another to enable him to pay laborers, who if their wages should remain unpaid, would be entitled to a lien therefor, is not entitled merely by virtue of such loan or advance to that lien by equitable subrogation. The advance must be made in expectation of being subrogated and under an agreement to that end. See Bank of Commerce v Lawrence County Bank, 80 Ark. 197, 96 S. W. 749, 117 Am. St. Rep. 85, 10 Ann. Cas. 211.

The rule of the civil law which required an absolute and express agreement for subrogation is modified by the generally accepted view that it is not necessary that there should be an express agreement that the lien shall be kept alive for the benefit of one advancing the money to pay it or that it be assigned, but if from all the facts

and circumstances surrounding the transaction it is clearly to be implied that it was the intention of the parties that the person making the advance was to have security of equal dignity and position with that discharged, then equity will decree a subrogation. In such case equity, speaking from the standpoint of good conscience, substitutes the person so paying the debt to the place of the original creditor so far as to enable him to enforce the security for the purpose of reimbursement. See 25 R. C. L. 1340; Bell vs Bell, 174 Ala. 446, 56 So. 926, 37 L. R. A. (N. S.) 1203 note; Wilkins v Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; Johnson v Barrett, 117 Ind. 551, 19 N. E. 199, 10 Am. St. Rep. 83; Heuser v. Sharman, 89 Iowa 355, 56 N. W. 525, 48 Am. St. Rep. 380; Good v. Golden, 73 Miss. 91, 19 So. 100, 55 Am. St. Rep. 486; Errett v Wheeler, 109 Minn. 157 123 N. W. 414, 26 L. R. A. (N. S.) 816; 37 Cyc. 468, Sudduth v Gallagher, 126 Mo. 393, 28 S. W. 880; In re North River Const. Co., 38 N. J. Eq. 433.''

In Brogan v. Ferguson, et al., filed March 30, 1931, reported 133 Sou. 317, this Court say:

''The modern authorities agree that the doctrine of subrogation has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons and that the agreement out of which conventional subrogation arises and upon which it rests may be express or implied.

The equitable rule of subrogation contended for by the appellant in this case is sustainable on the theory that since, as between the parties to the deed, the grantee by his contract agreed to save harmless the grantor from 'all liability whatsoever' incumbering the mortgaged property, the appellant as a mortgagee is entitled to the benefit of this contract, though she was unaware of its existence when made, under the familar doctrine that a creditor is entitled by equitable subrogation, to all securities held by a surety of the principal debtor. Keller v Ashford, 133 U. S. 610, 10 S. Ct. 494, 33 L. ed. 667; Osborne v. Cabell, 77 Va. 462; Greene v Stone, 54 N. J. Eq, 387, 34-A 1099, 55 Am. St. Rep. 577; Crowell vs Hospital of St. Barabas, 27 N. J. Eq. 650.''

It would appear that we need go no further than the

portals of our own Court to find ample authority for the application of the doctrine of subrogation in this case.

In 37 Cyc. p. 426, it is said:

"Where preference is given to a debt on account of its character, a surety upon paying the debt is entitled to the same preference to which the creditor was entitled, and to the dignity of such claim, and the same rule applies where a State or the United States is the creditor."

Supporting this doctrine is the case of Union Indemnity Co. vs. City of New Smyrna, et al., 130 Sou. 453; U. S. Fidelity Co. vs. Bramwell, 295 Fed. 331; Maryland Casualty Co. vs. McConnell, 148 Tenn. 656, 257 S. W. 410; U. S. Fidelity & Guaranty Co. vs. Central Trust Co., 95 W. Va. 458, 121 S. E. 430. See also Miami Mortgage & Guaranty Co. vs. Drawdy, 99 Fla. 1092, 127 Sou. 323; Gerseta Corporation vs. Equitable Trust Co., 241 N. Y. 418, 150 N. E. 501, 43 A. L. R. 1320; U. S. Fidelity & Guaranty Co. vs. Bramwell, 108 Ore. 261, 217 Pac. 332, 32 A. L. R. 829.

So it is that we now hold that under the facts alleged in the Bill of Complaint which are admitted by the demurrer, at the time Citizens Bank & Trust Company closed its doors and went into the hands of the Comptroller for liquidation it was the primary obligor on a certified check payable to the collector of Internal Revenue of the United States for Florida; that by reason thereof the United States had a lien for the amount of such check upon the assets of the Bank as provided by section 109, Title 26 of the Internal Revenue Act quoted, supra; that Cuesta, Rey & Company was the maker of and was secondarily liable on such certified check; that when the check was presented to the Bank and it failed to pay the same and when thereupon payment was demanded of Cuesta, Rey & Company and that company, being the secondary obligor for the payment thereof, paid the same in full, Cuesta, Rey & Company became thereby subrogated to the rights and liens existing by force of the statute in favor of the United States and

thereby acquired a secured and preferred claim for the amount of the check against the Bank and the liquidator thereof.

For the reasons stated, the order overruling the demurrer should be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

Reversed.

WHITFIELD AND BROWN AND DAVIS, J.J., concur.

ELLIS AND TERRELL, J.J., not participating.