Franklin Trust Company of Philadelphia Case.

Argued May 13, 1935.   Before Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Gerald F. Flood,* with him *Richardson Dilworth, Bernard J. Kelley,* Special Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General.

*Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Dudley T. Easby, Jr.,* and *Robert Brigham,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 29, 1935:

The court below sustained exceptions of the American Cigar Company, appellee, to the first and partial account of the secretary of banking, receiver of the Franklin Trust Company. In this account the secretary denied priority to the cigar company, as assignee and subrogee of the United States on its claim upon a dishonored certified check for $4,500, given by the cigar company in payment of internal revenue taxes owing to the United States.

The facts were agreed to in writing and were submitted to the court below at the hearing upon appellee's exceptions. This agreed statement of facts shows that the American Cigar Company was a depositor in the Franklin Trust Company of Philadelphia. On October 3, 1931, the trust company certified a check, No. 1740, drawn by the appellee for $4,500, payable to the order of "Collector of Internal Revenue." This check is the genesis of this controversy. At the time of the certification the appellee had on deposit with the trust company "free and clear of all claims, counterclaims and set-offs an amount in excess of $4,500." The check was duly delivered to the payee thereof in payment of U. S. Internal Revenue Taxes, pursuant to section 109, Title 26, U. S. Code (37 Stat. 733). On October 5, 1931, the collector deposited it in the federal reserve bank at Philadelphia for collection. On the same day the trust company was taken over by the state secretary of banking. The next day, October 6th, the federal reserve bank presented the check to the trust company for payment, but payment was refused on

the grounds that the trust company was then in the possession of the secretary of banking. The check was returned immediately to the Internal Revenue Collector and the collector "acting pursuant to the provisions of section 109, Title 26, U. S. Code (37 Stat. 733), made demand upon the claimant and exceptant for payment of the amount of said dishonored certified check; and on or about October 15, 1931, claimant and exceptant was compelled to deliver to said Collector of Internal Revenue, as payee, its check No. 1779, in the sum of $4,500, dated October 15, 1931, drawn upon the Philadelphia National Bank and certified by said bank on October 15, 1931, which latter check was honored and paid upon presentment." After the clearance and payment of the last mentioned check and on or about October 17, 1931, the Collector of Internal Revenue "executed an assignment to the claimant and exceptant whereby he, as Collector of Internal Revenue, did 'sell, assign and transfer to the American Cigar Company, its successors and assigns, the claim of the United States Government against said Franklin Trust Company (arising out of the certification of check No. 1740, in the amount of $4,500), and the lien of the United States Government in such amount against the assets of said bank.'" This then was the claim of the appellee in the court below that it is "the assignee and subrogee of the United States, upon the statutory prior claim of the United States against and the statutory prior lien of the United States upon the assets of said Franklin Trust Company." The court sustained the appellee's claim.

From this decree, the secretary of banking and two depositors, Loux and Henderson, separately excepted to the adjudication and two separate appeals were taken. The appeal of the secretary of banking filed to No. 270, January Term, 1935, is, upon the motion of the appellee, quashed. We find from the agreed stipulation of the facts that he has neither an equity, nor a legal interest other than that of a mere stakeholder in the decree from

which this appeal is taken and so he has no standing to appeal: Cameron v. City Bank of York, 284 Pa. 187, 130 A. 407; Cameron v. Carnegie Trust Co., 292 Pa. 114, 117, 140 A. 768.

As to the appeal of the two depositors who filed their exceptions "on their own behalf and on behalf of all depositors in the Franklin Trust Company," but who appealed in their own names, it is very doubtful whether they have a standing to appeal because of the condition of the record relating to their status. Nevertheless, we have decided to adjudge the matter on the merits.

Adverting to the legal questions arising upon the merits of the case, we find no decision of our appellate courts (and counsel has cited none), in which it was held that the right of priority accorded to the United States by Act of Congress or to the Commonwealth of Pennsylvania by statute, cannot either be legally assigned in writing or passed by subrogation to another. Counsel for the appellants refer us to the case of South Phila. State Bank's Insolvency, 295 Pa. 433, 145 A. 520, as authority for such a proposition. No such legal question was raised or decided in that case.* That case merely stands for the proposition that the State's "sovereign right to priority of payments over other depositors" of the bank could not be claimed by an individual "under the equitable doctrine of subrogation." There, the claimant was a surety company which had entered into a depository bond to secure the deposits of the Commonwealth. The surety bond was "obtained and paid by the insolvent bank, not by the Commonwealth." The bank failed and the surety company paid the Commonwealth the amount of its deposit. It then claimed that not only by virtue of the assignment by the state treasurer but also under the equitable doctrine of subrogation it was

---

* "General expressions used in the court's opinion are to be taken in connection with the case under consideration: Cohens v. Virginia, 6 Wheat. 264, 399"; Bramwell v. U. S. Fidelity Co., 269 U. S. 483, 489.

subrogated to the State's sovereign right of priority over other depositors of the bank. We held that the "special assignment was made without warrant of law," that is, that there was no specific legislative warrant for it. We also denied that under the facts in that case the equitable doctrine of subrogation could be made to apply to the sovereign rights of the State. We did, however, apply the equitable doctrine of subrogation to the rights of the Commonwealth *as a depositor,*" but not to enjoy its right of priority over other depositors," for we held that it could not be entitled to the State's sovereign right to priority of payment except by express legislation to that effect. The sovereign rights of a state cannot be transmitted to an individual through the avenues of the courts.

When the case just cited was before us on a former appeal (288 Pa. 300, 135 A. 748), we placed emphasis on some of "the facts in this case." We showed that "the relation between the Commonwealth and defendant [surety company] was not that of principal and surety in the ordinary sense of those terms, but that of insurer and insured. We said in Young v. Amer. Bonding Co., 228 Pa. 373, 379 [77 A. 623] : 'in all essential particulars the appellee here is an insurance company, and its obligation in this particular instance was that of an insurer. It was paid for its undertaking; the amount of its compensation being based on the calculation of risk assumed. The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. . . . While such corporations may call themselves 'surety companies' their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee.' "

We said further in that case "it must always be remembered, also, that the bank and not the Commonwealth applied for the $10,000 bond. All the covenants and agreements set forth in that application are the covenants and agreements of the bank only. The provisions for indemnification and subrogation appearing therein are the bank's and not the Commonwealth's; the subrogation growing thereout must, therefore, be of the bank's rights or remedies. . . . So, also, the clause in the application which stipulated that defendant should have every right and remedy which an individual surety acting without compensation would have can only refer to the rights and remedies of the bank. . . . Subrogation is not a matter of right but of pure equity, and is never allowed when inequity would result," citing cases. Of course, under such facts, subrogation could not have been allowed nor would we have allowed it under other facts, for the sovereign right of the State to priority of payment over other depositors cannot pass by subrogation to another except by the explicit command of the legislature. But the *sovereign right to priority* as in that case is entirely different from *the statutory right to priority and lien* as in this case. Where the priority is not a priority inherent in sovereignty, but arises by virtue of an Act of Congress or of the legislature, then the same equitable principles that apply to subrogation in re the rights of individuals may be applied to subrogation in re the statutory rights of the sovereign.

In the instant case, the prior lien and claim of the United States is founded upon the Act of Congress of March 2, 1911, chapter 191, 36 Stat. 965, as amended by the Act of March 3, 1913, chapter 119, 37 Stat. 733, 26 U. S. C. A., section 109, which provided: "It shall be lawful for collectors of internal revenue to receive for internal taxes and all public dues certified checks drawn on national and state banks and trust companies during such time and under such regulations as the secretary of the treasury may prescribe. No person, however, who

may be indebted to the United States on account of internal taxes who shall have tendered a certified check or checks as provisional payment for such duties or taxes, in accordance with the terms of this section, shall be released from the obligation to make ultimate payment thereof until such certified check so received has been duly paid; and if any such check so received is not duly paid by the bank on which it is drawn and so certifying, the United States shall, in addition to its right to exact payment from the party originally indebted therefor, have a lien for the amount of such check upon all the assets of such bank; and such amount shall be paid out of its assets in preference to any or all other claims whatsoever against said bank, except the necessary costs and expenses of administration and the reimbursement of the United States for the amount expended in the redemption of the circulating notes of such bank."

In its annotation to this section, the editors of the U. S. Code Annotated (1934 Cumulative Annual Pocket Part) cite Cuesta, Rey & Co. v. Newsom (1931), 102 Fla. 853, 136 So. 551. There is no difference between the facts in that case and in the case now before us. There, as here, the taxpayer paid internal revenue taxes by certified check but before the check was presented for payment the bank went into the hands of the comptroller for liquidation. Demand was made upon the taxpayer to again pay the taxes, which he did. The Supreme Court of Florida said: "So it is that we now hold that . . . at the time Citizens' Bank & Trust Company closed its doors and went into the hands of the comptroller for liquidation, it was the primary obligor on a certified check payable to the collector of internal revenue of the United States for Florida; that by reason thereof the United States had a lien for the amount of such check upon the assets of the bank, as provided by section 109, title 26, U. S. C. A., the Internal Revenue Act, quoted supra; that Cuesta, Rey & Co. was the maker of and was secondarily liable on such certified check; that when the

check was presented to the bank and it failed to pay the same, and when thereupon payment was demanded of Cuesta, Rey & Co., and that company, being the secondary obligor for the payment thereof, paid the same in full, Cuesta, Rey & Co. became thereby *subrogated to the rights and liens existing by force of the statute in favor of the United States and thereby acquired a secured and preferred claim for the amount of the check against the bank and the liquidator thereof.*" (Italics supplied.)

To a like effect is the case of Dayton, Trustee, v. Treasurer of Pueblo Co., 241 U. S. 588, 36 S. Ct. 695, 60 L. ed. 1190. In that case, the Act of Congress, namely the Bankruptcy Act, provided for payment of all taxes owing by a bankrupt in advance of payment of dividends to creditors. The facts showed that there was a sale of taxes on real property belonging to a bankrupt's estate then in the course of administration in the court of bankruptcy. Because the property was sold without leave of the court, the sales were declared invalid and were set aside. The court then directed the trustee to sell the same tracts "free from any lien for the taxes and assessments." The holders of the certificates of purchase at the first sale asked that they be reimbursed for the taxes which they paid. The Supreme Court, in an opinion by Mr. Justice VAN DEVANTER, directed such reimbursement, saying: "Considering the plain provision in section 64a of the Bankruptcy Act of 1898 (30 Stat. 544), that 'the court shall order the trustee to pay all taxes legally due and owing by the bankrupt . . . in advance of the payment of dividends to creditors,' we entertain no doubt of the propriety of requiring that the certificate holders, who had paid the taxes and assessments at the sales, be reimbursed upon the cancellation of their certificates, or of requiring that the reimbursement be out of the general assets. The taxes and assessments were not merely charges upon the tracts that were sold, but against the general estate as well."

In the instant case, the certified check was, as provided by Act of Congress, a charge on the assets of the bank. Though the Act of Congress did not expressly provide for the right of subrogation, the United States Supreme Court "entertains no doubt of the propriety of requiring" it, under the Bankruptcy Act of 1898. We likewise entertain no doubt of the propriety of requiring it under section 109, title 26, U. S. Code. As this decides the issue, the question of the validity of the assignment by the collector of internal revenue requires no discussion or determination.

No. 270. The appeal of the secretary of banking is quashed.

No. 271. The decree is affirmed; costs are to be paid out of the fund in the hands of the receiver.