## AMERICAN TOBACCO CO. v. SOUTH CAROLINA NAT. BANK.

### No. 829.

District Court, E. D. South Carolina.
June 8, 1936.

W. Turner Logan, of Charleston, S. C., for plaintiff.

Mitchell & Horlbeck, of Charleston, S. C., for defendant.

MYERS, District Judge.

This cause was submitted for hearing after full argument on the stipulation of facts submitted and adopted by the court. The facts are briefly as follows:

That in the early part of March, 1933, the plaintiff, the American Tobacco Company, being indebted to the United States government in the sum of $15,000 for internal revenue taxes, drew three checks, aggregating $15,000, on the defendant bank, which were duly certified by the defendant bank and forwarded to the collector of internal revenue. By reason of the bank holiday proclaimed by the President of the United States, the checks were not paid. The internal revenue collector retained the checks in his possession until July 12, 1933, when the American Tobacco Company, pursuant to the demand of the internal revenue collector, paid to the collector the sum of $15,000. The plaintiff, then having received back its checks and also an assignment by the internal revenue collector of its lien against the assets of the bank, presented the checks to the bank, demanded payment of said checks, and the bank refused.

Thereupon this suit was brought, plaintiff alleging that it was entitled to be paid the checks by reason of its being subrogated to the rights of the government, under title 26, § 1546, U.S.C.A., 1934 Edition (title 26, § 109, U.S.C.A., 1925 Edition), not only under the general doctrine of subrogation, but also by reason of the assignment made to it by the internal revenue collector. The defendant by its answer takes the position that it would be inequitable to allow the right of subrogation to the plaintiff, as it would in effect amount to a preference, claiming that the lien of the government allowed by section 1546, supra, was only for the benefit of the government, and it would be unjust to the other creditors of the bank to require it to pay this $15,000.

My opinion of a proper statement of the situation presented at the time of the demand made by the plaintiff is as follows:

The reorganized bank received this fund, not as assets applicable to such distribution as might be subsequently made to general depositors, but as holders thereof subject to immediate payment upon demand of the collector of internal revenue under the government's lien, as provided in section 1546, supra. The government had two options: Either to immediately exercise its lien or, under the provisions of the statute, to call on plaintiff to make good the amount of the checks certified by the bank and payable to the collector in the amount of the tax. The election was to make the demand of the taxpayer. The demand was met; the checks returned to the taxpayer, together with an assignment by the collector of internal revenue of the government's lien against the assets of the bank. I cannot adopt the defendant's view that it would be inequitable or unjust to the other creditors of the bank

to uphold the plaintiff's right to recover. Until the government pursued the course of requiring the plaintiff to pay the checks, there was no reason to doubt that the defendant would have to pay the total amount of said checks, and held the fund for that purpose and no other. To hold otherwise would be to enrich the general creditors of the bank by a fund upon which they had no claim; and no arrangement by the conservator, the committee for reorganization of the bank, or any one else, could, in my opinion, change or affect the legal and equitable right of the parties then existing or thereafter to arise.

The cases of Cuesta Rey & Co. v. Newsom, 102 Fla. 853, 136 So. 551, and the case of In re Harr, 319 Pa. 193, 179 A. 725, where the facts were identical with the facts agreed to in this case, confirm the position that I take that the bank should pay the certified checks drawn to the order of the collector of internal revenue. The case of In re McBride, Fed.Cas. 8,662, District Court, Eastern District of Michigan, sustains the thought I have in the following language: "If the government were now prosecuting this claim, it would be paid in full, and it seems to me inequitable to allow the general creditors of the bankrupts' estate to be benefited at the expense of the deputy collector, who, to make good his guaranty to the government, has assumed and paid the sum owing by the bankrupts' estate."

■■ As a special matter, the question of allowance of interest on the amount of the claim from the date of demand presents itself to the court for equitable consideration. There was a basis for the refusal, with a cautious regard for general depositors and creditors. I think, therefore, the court is justified in taking judicial notice of the present well-known banking situation, from which it would be reasonable to infer that the holding and use of the fund in question has not been lucrative to the bank or damaging to the plaintiff to such extent as to require the payment of the full legal rate of interest. The equitable view is that no more should be required than the payment of the prevailing rate of interest allowed upon savings banks deposits.

It is therefore ordered, adjudged, and decreed, that the defendant, South Carolina National Bank, be, and is hereby, ordered to pay to the plaintiff, the American Tobacco Company, the sum $15,000, with interest from the 12th day of July, 1935, at the rate of 2 per cent. per annum, together with proper costs; provided that the said principal sum shall bear interest at the legal rate from and after 30 days from the date of this order, if not then paid.