## Smith et al. *v.* Capital Bank and Trust Company et al., Appellants.

Argued January 12, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harold D. Saylor,* with him *John T. Olmsted, Metzger & Wickersham* and *William T. Campbell,* for appellants:

*Mark T. Milnor,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, March 22, 1937:

This bill in equity was brought by the plaintiffs as liquidating trustees of the trusteed assets of the Union Trust Company of Pennsylvania to restrain the Capital Bank and Trust Company from paying the sum of $12,-500 to Massachusetts Bonding and Insurance Company and $75,000 to American Surety Company, and to enjoin these two companies from recovering the sums named. The chancellor and the court in banc granted the relief prayed for and the two companies have appealed.

The Commonwealth had on deposit in the Union Trust Company $87,500 secured by the depository bonds of the two companies in the particular amounts heretofore named. On March 14, 1933, the Union Trust Company took advantage of the Act of March 8, 1933, P. L. 9, 7 P. S., Sec. 284, and restricted payment to its depositors. Thereafter a plan of reorganization of Union Company and another financial institution was formulated and adopted by more than 75% of the depositors, creditors and shareholders of the Union Company on October 20, 1934, in pursuance of the requirements of the Act of May 4, 1933, P. L. 271, No. 95, 7 P. S. Sec. 109. The plan of reorganization was approved by the Secretary of Banking. The title of the bank as reorganized is Cap-

ital Bank and Trust Company and to this new institution the Union Trust Company turned over the sum of $87,500 as a deposit due the Commonwealth. When this was done, it was not known by Union Trust Company that the Commonwealth, which had presented its draft to the Union Company on October 24, 1934, for the full amount of the deposit, which draft had been dishonored, had been reimbursed the total amount of its deposit by the two surety companies.

The Massachusetts Company received from the Commonwealth an assignment of the Commonwealth's deposit to the extent of $12,500. It presented this assignment to the Capital Company on April 16, 1935, and made demand for payment, which was refused. The American Company has not received any assignment of its share of the deposit. We regard these circumstances as immaterial in decision.

Under the plan of reorganization, depositors not preferred are entitled to receive 20% of their deposits in cash, 15% in stock of the new bank, and the balance, if any, out of the assets delivered by the old bank to the liquidating trustees. The Commonwealth and all depositors having net balances of $25 or less, all creditors having treasurer's checks, certified checks and unpaid drafts, and those stockholders holding unpaid dividend checks, due to their failure to cash the same, were preferred by the terms of the reorganization plan. The chancellor determined that appellants do not occupy the position of preferred depositors.

Appellant surety companies recognize that, as subrogees of the Commonwealth, they cannot maintain its position as sovereign entitled to be paid the amount of the deposit in full: *South Phila. State Bank's Insolvency,* 295 Pa. 433, 145 A. 520; *Franklin Trust Co. of Phila. Case,* 319 Pa. 193, 179 A. 725. Their contention, as stated in their brief, is that since the Commonwealth was preferred by the terms of the plan, appellants' rights in subrogation to the Commonwealth's arise under the

plan and not under the doctrine of sovereignty. A complete answer to this position is that the Commonwealth was not a party to the plan. It was a preferred depositor under the law and not as a result of agreement. As it occupied no position as a result of agreement and as appellants cannot occupy that which it held as sovereign, they hold no preferred position at all.

There can be no question, and the court below so found, that the amount of the Commonwealth's deposit was turned over by the old bank to the new one by mistake. The Commonwealth had been paid by the surety companies. To correct mistakes is one of the cardinal attributes of equity: Act of June 13, 1840, P. L. 666, Sec. 39, 17 P.S. Sec. 286; Act of April 16, 1845, P. L. 542, Sec. 3, 17 P.S. 289; Act of February 14, 1857, P. L. 39, Sec. 1, 17 P.S. Sec. 283; *Radnor B. & L. Assn. v. Scott,* 277 Pa. 56, 120 A. 804. "One who by mistake of fact pays more than is due may recover the overpayment": *Mosser v. Cherry River B. & L. Co.,* 290 Pa. 67, 72, 138 A. 85; *Kunkel v. Kunkel,* 267 Pa. 163, 110 A. 73.

The appellants further contend that even though the Union Company did not know of the payment by the sureties to the Commonwealth, they had reason to foresee such payment as they knew that if they did not pay in full the surety companies would be required under their agreement to do so. From this it is argued that the officials of the Union Company were negligent in failing to discover whether payment had actually been made by the surety companies and for this reason the appellees cannot recover the assets transferred to the Capital Company. The difficulty with this argument is that it is immaterial whether the Union Company was guilty of negligence or not. "The circumstance that plaintiff had ready and ample means of information, which, if taken advantage of, would have avoided the wrong payment, was not sufficient to prevent recovery. . . . Negligence in making a mistake does not deprive

a party of his remedy on account thereof; it is the fact that one by mistake unintentionally pays money to another to which the latter is not entitled from the former, that gives the right of action": *Kunkel v. Kunkel,* 267 Pa. 163, 169, 110 A. 73; *McKibben v. Doyle,* 173 Pa. 579, 34 A. 455; *Brown v. Johnson,* 107 Pa. Superior Ct. 138, 163 A. 365. "The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof": Restatement, Contracts, Sec. 508.

We are unable to see anything in the record on which an estoppel could be founded or laches be set up.

The decree is affirmed at appellants' cost.