## NORTHWESTERN NATIONAL INSURANCE COMPANY *v.* GARY A. GOLDSTEIN, TRUSTEE ET AL.

[No. 577, September Term, 1976.]

*Decided February 8, 1977.*

The cause was argued before GILBERT, C. J., and THOMPSON and MOORE, JJ.

*Patrick G. Cullen,* with whom were *Lerch & Huesman* on the brief, for appellant.

*Gary C. Duvall*, with whom was *Gary A. Goldstein* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

Seeking to prove wrong Proverbs 12:15 (King James) that, "He that is surety for a stranger shall smart for it," Northwestern National Insurance Company appeals from an order of the Circuit Court for Baltimore County denying priority status to Northwestern in an insolvency proceeding.

The case is submitted to us on an agreed statement of facts, which, with slight editing, we quote in full:

> "J & L [1] was in the business of trading and selling recreational vehicles. To receive from Maryland officials the proper licenses and permits, it obtained from Northwestern a surety bond guaranteeing that J & L would comply with various statutes of the State of Maryland. One of those statutes required J & L to turn over to the State all excise taxes it collected from sales of recreational vehicles. J & L collected $5,674.30 from its customers for excise taxes to be paid to the State of Maryland for its customers, but failed to turn over said sum to the State. Northwestern, in accordance with the surety bond it had issued, paid $1,921.32 directly to the State for nonpaid excise taxes and further paid $3,752.98 to customers of J & L who had been required by the State to pay again the excise tax directly to the State before the State would issue tags and titles for the vehicles.
>
> Northwestern filed a claim in the Deed of Trust [2] proceedings seeking a priority status on account of those payments. The Court-Appointed auditor allowed such claim as a priority over general claims. Upon objection by [Equitable Trust Company,] another creditor [3], . . . [the chancellor] disallowed the priority."

1. J & L Camping & Sports Center.
2. J & L executed a Deed of Trust for the benefit of creditors.
3. Equitable's unsecured lien was $644,643.

Smarting from the circuit court's disallowance of the priority, Northwestern asks us to apply balm to the sting by reversing the matter. We shall reverse, but only to extent of the $1,921.32 paid directly to the State of Maryland. We affirm, however, that portion of the order refusing priority status to the $3,752.98 that Northwestern reimbursed customers of J & L. We now state our reasons.

At the time of the chancellor's decision, April 28, 1976, Md. Com. Law Code Ann. § 15-102 provided in pertinent part:

"(b) *Priorities.* — The property of an insolvent who makes an assignment for the benefit of creditors or who has his property taken by a receiver under a decree of a court in an insolvency proceeding shall be applied to the following, in the order stated:

(1) Lien claims of the State, a county, municipal corporation, or other political subdivision of the State, and claims of persons having judicial liens on property of the insolvent recorded more than four months before the assignment or institution of the insolvency proceeding [4];

(2) Costs and expenses of the administration of the trust or the insolvency proceeding which the court approves;

(3) Wages of an employee and health, welfare, and pension contributions contracted for in place of wages, earned not more than three months before the assignment or institution of the insolvency proceeding;

(4) Rent for any interest in real property in the

---

4. By 1976 Md. Laws ch. 388, effective May 4, 1976, the language of subsection (b)(1) was amended as follows:

"(1) Lien claims of the State, a county, municipal corporation, or other political subdivision of the State *perfected or recorded before the assignment or institution of the insolvency proceeding,* and claims of persons having judicial liens on property of the insolvent recorded more than four months before the assignment or institution of the insolvency proceeding. . . ."

The italics are supplied to emphasize the added language. In all other respects, § 15-102 remains the same. Even though this amendment became effective more than two months prior to the chancellor's order of July 14, 1976, the amendment has no effect on this opinion.

State due not more than three months before the execution of the assignment or institution of the insolvency proceeding;

(5) Charges in connection with the transportation of goods advanced by one common carrier to another on behalf of a consignor or consignee not more than three months before the assignment or institution of the insolvency proceeding;

(6) Taxes not included in paragraph (1) of this subsection; and

(7) Claims of unsecured creditors."

The appellees argue, "The paramount goal which the insolvency laws have always sought to achieve is *equal* distribution of an insolvent's property among its creditors." The chancellor agreed with that view when he stated, "The overriding policy of the insolvency laws is . . . to treat all creditors equally." We disagree. It seems to us that § 15-102 makes crystalline that *"equal* distribution" is not the objective of the State insolvency laws, nor are they designed "to treat all creditors equally." On the contrary, the very statute creating priorities repudiates that position, else why have priorities. We believe the State policy on insolvency to be *to treat all creditors within the same class equally*. Hence, two unsecured creditors are treated in the same manner, but a creditor with a priority claim would have a preferred status as to the unsecured creditors. *N. Hess & Brother v. Jewell*, 85 Md. 235, 36 A. 758 (1897). While it is true that § 15-102 does not specifically provide that a surety is subrogated to the rights of its obligor, nothing within the statute forbids the subrogation. In fact, Md. Com. Law Code Ann. § 15-401 seems to convey that meaning. It provides:

"If a surety in any bond or other obligation for the payment of money or a promissory note, or the endorser of a protested draft, pays or tenders the money due on it in full, he is entitled to an assignment of it and, by virtue of the assignment, may maintain an action in his name against the principal debtor."

As is stated in the Revisor's Note to § 15-401, "[t]he purpose of this section is to place the surety 'in the shoes of the

judgment creditor, and embraces all kinds of sureties. . . .'
*See Wallace v. Jones*, 110 Md. 143 [, 72 A. 769] (1909) . . . ."
No distinction between compensated and non-compensated
sureties is drawn by the statute.

The Court of Appeals in *Orem v. Wrightson*, 51 Md. 34,
45-46 (1879), held that a surety is subrogated to all the rights
of his obligor, including priority. The Court said:

> "*We think the doctrine is well established by a
> decided preponderance of the cases, that a surety,
> who has paid the debt of his principal obligor, is
> subrogated in equity by the act of payment, not
> only to the securities of the creditor, but to all his
> rights of priority. If therefore the creditor could
> have rightfully claimed a preference in the
> distribution of assets, the same preference will be
> upheld by way of subrogation for the benefit of the
> surety.*
>
> Is a different rule to be applied where the State is
> the creditor? We can see no reason why it should be.
> It is not necessary to inquire how, or in what
> manner the State's right to rank as a preferred
> creditor is derived, whether it is a prerogative right
> derived from the common law, or whether it has
> been conferred by statute. As is said in some of the
> cases to which we have referred, equity in applying
> the doctrine of subrogation looks not to form, but to
> the substance and essence of the transaction. It
> looks to the *debt* which is to be paid, and not to the
> *hand* which may happen to hold it, and will see that
> the fund charged with its payment shall be so
> applied. . . .
>
> . . . And if equity does not regard the hand which
> holds the debt, and will see that the fund charged
> with its payment shall be so applied, what
> difference can logically result whether the creditor,
> to whom the surety has made payment, is the State
> or an individual.
>
> While this view of the law will do no wrong
> to any one, it will add facilities in securing and

collecting the revenue of the State. If sureties know that they can be subrogated to the priority of the State, less apprehension will be felt in joining in the bonds of collectors, and less delay in payment by solvent sureties, other creditors are not injured, for if the State has the first claim upon the fund, it does them no wrong whether this claim is enforced by the State, or by those standing in its stead." (Citation omitted) (emphasis supplied).

*See also Motor Vehicle Security Fund v. All Coverage Underwriters, Inc.*, 22 Md. App. 586, 609, 325 A. 2d 115, 128-29 (1974).

Contrary to the chancellor's view that *Orem* "is of no force today" stands the overwhelming weight of authority. *See* A. Stearns, *The Law of Suretyship* § 11.5 (5th ed. J. Elder 1951); *Restatement of Security* § 141 (a), Comment c, Illustration 5 (1941); Annot., 24 A.L.R. 1502 (1923). Cases of other jurisdictions following the general rule are: *Aetna Casualty and Surety Co. v. Sherwood Distilling Co.*, 271 F. Supp. 381 (D. Md. 1967); *Continental Casualty Co. v. United States*, 169 F. Supp. 945 (Ct. Cl. 1959); *Arkansas Power & Light Co. v. Fidelity & Casualty Co.*, 197 Ark. 187, 121 S.W.2d 890 (1938), drawing no distinction between compensated and noncompensated sureties; *Cuesta, Rey & Co. v. Newsom*, 102 Fla. 853, 136 So. 551 (1931); *In re Harris' Estate*, 161 Misc. 793, 293 N.Y.S. 250 (1937); *State ex rel. Southern Surety Co. v. Schlesinger*, 114 Ohio St. 323, 151 N. E. 177 (1926); *United States Fidelity & Guaranty Co. v. Bramwell*, 108 Or. 261, 217 P. 332 (1923); *Franklin Trust Co. Case*, 319 Pa. 193, 179 A. 725 (1935); *Gummelt v. Southwestern Indemnity Co.*, 363 S.W.2d 379 (Tex. 1962); *State ex rel. County Court v. Doddridge County Bank*, 116 W. Va. 683, 182 S. E. 884 (1935). *Contra, United States Fidelity and Guaranty Co. v. McFerson*, 78 Colo. 338, 241 P. 728 (1925); *Commissioner v. Chelsea Savings Bank*, 161 Mich. 691, 125 N. W. 424 (1910).

Moreover, *Orem* has not been overruled by the Court of Appeals and thus is still alive and well.

We think, as we have previously observed, that

Northwestern, having paid the State's claim of $1,921.32, was then subrogated to the State's claim and its priority status in the distribution of the insolvent's estate.

With respect to the remaining $3,752.98, we note that the various persons who paid that aggregate sum to the State apparently had previously paid the money to J & L, but that J & L did not forward the sum to the State. When the State demanded the payment of the taxes by the persons who had already paid J & L, those persons paid the State directly, notwithstanding their prior payment to J & L. Thus, no part of the $3,752.98 was due the State when the surety was called upon to make good on its bond. One does not become subrogated to the State by paying taxes to it which one was legally obligated to pay so that none of the persons who paid the $3,752.98 were subrogees of the State. They were, however, general creditors of J & L to the extent of $3,752.98, and when Northwestern paid those general creditors, it stepped into their shoes and became a general creditor also.

The trustee, Gary A. Goldstein, Esq., was, in the circumstances of this case, no more than a stake-holder. It should have been immaterial to Mr. Goldstein as to the status of the appellant, or whether Equitable received a greater share of distribution than allowed by the auditor's report. Why the trustee deemed it necessary to be represented by counsel in this appeal eludes us. In any event, in reversing in part, we shall assess all appellees' costs against Equitable and not cause an additional expenditure of the trust estate.

> *Order affirmed in part and reversed in part.*
>
> *Case remanded for the entry of an order consistent with this opinion.*
>
> *Costs to be paid one-half by appellant and one-half by appellee, Equitable Trust Company.*