*109 SLOVITER, Circuit Judge,
dissenting.
The appeal before us starkly presents the difference between law and equity. The Majority hews to a strict construction of law. I dissent because I believe all the circumstances compel application of equity.
Equity originated as a means of allowing judicial decision-making based on fairness, compassion or flexibility where an adequate remedy at law was unavailable. Dan B. Dobbs, Dobbs Law of Remedies § 2.1(3), at 63 (2d ed.1993). It therefore requires outcomes where “commonly accepted feelings of fairness demand more flexibility than pure, straight-faced ‘law’ would allow.” Id. For example, courts have long recognized that “correcting] mistakes is one of the cardinal attributes of equity.” Smith v. Capital Bank & Trust Co., 325 Pa. 369, 191 A. 124, 125 (1937). A constructive trust, moreover, “ ‘is the formula through which the conscience of equity finds expression.’ ” Chambers v. Chambers, 406 Pa. 50, 176 A.2d 673, 675 (1962) (quoting Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380 (1919)).
A constructive trust arises where “a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.” Denny v. Cavalieri, 297 Pa.Super. 129, 443 A.2d 333, 335 (1982). There is no “rigid standard” for determining whether the facts of a particular case require the imposition of a constructive trust. Stauffer v. Stauffer, 465 Pa. 558, 351 A.2d 236, 241 (1976); see also Chambers, 176 A.2d at 675 (recognizing that a court is bound by “no unyielding formula” in decreeing a constructive trust (citation omitted)). Instead, “the test is whether or not unjust enrichment can thereby be avoided.” Stauffer, 351 A.2d at 241.
As the Majority acknowledges, unjust enrichment may result, inter alia, from mistake, Denny, 443 A.2d at 335, and requires “clear, direct, precise and convincing” evidence. Roberson v. Davis, 397 Pa.Super. 292, 580 A.2d 39, 41 (1990) (citations omitted). However, that standard does not — as the Majority seems to suggest — require conclusive evidence, based on Mr. Kaiser’s statements alone, that he mistakenly failed to designate Mrs. Kaiser as the Policy beneficiary on the life insurance policy with Massachusetts Mutual Insurance Co. (“Mass. Mutual”). Rather, we may impose a constructive trust if the totality of the circumstances — proven by clear and convincing evidence — demonstrates that a mistake occurred and unjust enrichment would thereby result. Cf. Denny, 443 A.2d at 335 (concluding that a finding of fraud requiring the imposition of a constructive trust may be inferred from the totality of the circumstances, including the subsequent conduct of the transacting parties); Stauffer, 351 A.2d at 244 (same).
The Majority determines that Mrs. Kaiser is not entitled to a constructive trust because she neither pled the elements of an unjust enrichment claim nor employed the phrase “unjust enrichment” in her cross-claim. See Majority Op. at Section III-D. A constructive trust, however, is merely a form of equitable relief, see Makozy v. Makozy, 874 A.2d 1160, 1168 (Pa.Super.Ct.2005), which Mrs. Kaiser specifically requested in her third and fourth cross-claims. See App. at 69 (stating that “the beneficiary of the Policy either was changed to Mrs. Kaiser, or should be changed ... by order of th[e] Court”). Moreover, this court has recognized that it may “award[ ] any relief appropriate under the circumstances ... even [if] the complaint did not request [such] relief.” Kahan v. Rosenstiel, 424 F.2d 161, 174 (3d Cir.1970); see also Fed. R. Civ. Pro. 54(c) (“[A] final judgment should grant the relief *110 to which each party is entitled, even if the party has not demanded that relief in its pleadings.”)• Indeed, so long as a cause of action for equitable relief is “in fact inherent in the [pleadings],” such relief may be granted.[1] Kahan, 424 F.2d at 174.
In her third cross-claim, Mrs. Kaiser sets forth sufficient facts to support the court’s imposition of a constructive trust. Specifically, she alleged that “[a]t all times subsequent to his marriage to Mrs. Kaiser, Mr. Kaiser intended to provide financial protection to his wife, especially after the birth of their daughter.” App. at 69. Additionally, Mrs. Kaiser alleged that Mr. Kaiser attempted to change the Policy beneficiary to Mrs. Kaiser, believed that he had done so, and even included the Policy in a list of assets that would be available to Mrs. Kaiser after his death. Those allegations sufficiently demonstrate that Mrs. Curley would be unjustly enriched by her receipt of the Policy funds because she would realize a benefit originally intended for Mrs. Kaiser, and — given Mr. Kaiser’s mistake — her retention of those benefits would be inequitable.[2]
Beyond the sufficiency of the pleadings, we should impose a constructive trust in Mrs. Kaiser’s favor because the totality of the circumstances, including the relationships between Mr. Kaiser, Mrs. Kaiser and Mrs. Curley, demonstrate that Mrs. Cur-ley’s receipt of the Policy benefits would lead to unjust enrichment. At the time of his death, Mr. Kaiser had been separated from his former wife, Mrs. Curley, for four years, and their two children were legal adults. Not only was Mr. Kaiser remarried, but Mrs. Curley had also remarried and inherited significant sums of money from the ex-couple’s divorce agreement and her parents. In fact, Mr. Kaiser was engaged in acrimonious litigation with Mrs. Curley around the time of his death.
On the other hand, the record shows that Mr. Kaiser maintained a close and interdependent marital relationship with Mrs. Kaiser. Unlike his two children with Mrs. Curley, who were in their twenties, Mr. Kaiser’s child with his wife was only three years old at the time of his death. Further, Mrs. Kaiser was unemployed and dependent on financial support provided by the decedent.[3]
*111 A finding of mistake is further bolstered by evidence demonstrating that Mr. Kaiser thought that he had in fact changed the Policy beneficiary to Mrs. Kaiser. As the Majority acknowledges, Mr. Kaiser filed a “Change of Beneficiary” form in favor of Mrs. Kaiser on a $5,000 life insurance policy with Mass. Mutual. That form, however, provided only a policy number and did not indicate the value of the underlying policy. Demonstrating his belief that he actually changed the Policy beneficiary to Mrs. Kaiser, Mr. Kaiser subsequently informed his financial advisor that Mrs. Kaiser would receive $2,000,000 dollars in life insurance proceeds after his death.[4] Mr. Kaiser likewise told his wife that he had designated her as the Policy beneficiary.[5] Thus, in applying for a replacement policy with Prudential Insurance Co., Mr. Kaiser listed Mrs. Kaiser as the beneficiary on the Mass. Mutual policy. Furthermore, despite knowing about the Policy and Mr. Kaiser’s death, Mrs. Curley did not make a claim to the Policy benefits until Mass. Mutual informed her that she was still named as the beneficiary.[6]
Finally and of significance, Pennsylvania policy supports application of equity here. A Pennsylvania statute, 20 Pa. Const. Stat. Section 6111.2 (“Section 6111.2”), enacted in 1992 provides, in relevant part:
[I]f an individual ... designates [his or her] spouse as beneficiary of the individual’s life insurance policy ... and ... at the time of the individual’s death is divorced from the spouse[,] ... [a]ny designation ... in favor of the individual’s ... former spouse that was revocable by the individual at the individual’s death shall become ineffective for all purposes and shall be construed as if the ... former spouse had predeceased the individual, unless it appears the designation was intended to survive the divorce.
This legislation protects “divorced owners of life insurance policies, and of those, only ones who inadvertently neglect to revoke pre-divorce designations of their spouses as beneficiaries.” Parsonese v. Midland Nat’l Ins. Co., 550 Pa. 423, 706 A.2d 814, 818 (1998). Mrs. Curley has offered no evidence that suggests Mr. Kaiser intentionally retained his former (pre-divorce) designation of Mrs. Curley as the beneficiary of the policy. Because the totality of the circumstances demonstrates that Mr. Kaiser, by his inattention, mistakenly failed to designate his wife as the policy beneficiary, Mrs. Kaiser is precisely the type of individual the Pennsylvania Legislature has set out to protect. Moreover, “the generally understood purpose of life insurance” is to compensate for “loss to a party having an expectation of pecuniary *112 or personal benefit in the continued life of the deceased,” Spinner v. Fulton, 111 F.Supp. 398, 404 (M.D.Pa.1991), aff'd sub nom., Spinner v. Hartford Accident & Indem. Co., 947 F.2d 937 (3d Cir.1991), a position held by Mrs. Kaiser rather than Mrs. Curley. Overall, equitable considerations support this court’s imposition of a constructive trust in favor of Mrs. Kaiser.
For the foregoing reasons, I respectfully dissent.

.At oral argument, counsel for Mrs. Curley emphasized that Mrs. Kaiser did not specifically request the imposition of a constructive trust based on unjust enrichment until the "second round” of summary judgment briefing and stated that counsel for Mrs. Curley perceived the request as a "catch all,” essentially arguing that the court should exercise its discretionary powers to grant relief despite a valid beneficiary designation. Oral Arg. at 21:00. That understanding, however, was also supported by Mrs. Kaiser's third and fourth cross-claim, asking the court to change the policy beneficiary irrespective of the current designation. Therefore, there was no unfair surprise in this case. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 499-500 n. 1 (3d Cir.1997) (stating that "a complaint must provide a defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests” (internal quotation marks and citation omitted)).

. As the Majority notes, the central components of unjust enrichment are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff.” Majority Op. at Section III-D (citing EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir.2010)).

. There is no basis to dispute whether these facts have been proven by clear and convincing evidence, as they are established by Mrs. Kaiser's undisputed testimony. The proper question is whether the facts, combined with other uncontroverted evidence in the record, allow the court to infer that Mr. Kaiser’s failure to designate Mrs. Kaiser as the Policy beneficiary was a mistake.

. At the time Mr. Kaiser consulted with his financial advisor, Mr. Kaiser owned three life insurance policies: (1) the $5,000 Mass. Mutual insurance policy; (2) the $1,000,000 Mass. Mutual insurance policy; and (3) a $1,000,000 policy with Travelers Insurance Company. Thus, the proceeds he mentioned to his financial advisor necessarily included the $1,000,000 Mass. Mutual insurance policy.

. Appellee contends that this evidence constitutes inadmissible hearsay. However, such out-of-court statements are admissible because Mrs. Kaiser is not offering them for the truth of the matter asserted but as circumstantial proof of Mr. Kaiser's intent to change the Policy beneficiary. See Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 134 (3d Cir.1997).

.The record also shows that Mr. Kaiser experienced significant disruption during his final years, including his divorce, litigation with his ex-wife, the formation and failure of a new law firm, and the death of his mother. Such upheaval lends further support to the conclusion that Mr. Kaiser — through inattentiveness — mistakenly failed to designate Mrs. Kaiser as the Policy beneficiary.